No. 43,634

DONALD L. SCHRODER, Guardian of Loretta Jean Schroder, Insane, *Appellant*, v. LYNN G. BRADEN, a Sole Proprietor, Doing Business as BRADEN CONSTRUCTION COMPANY, and MIDWEST PRECOTE COMPANY, a Corporation, *Appellees*.

(391 P. 2d 1005)

Opinion filed May 9, 1964.

*Harold G. Forbes,* of Eureka, argued the cause, and *Thomas C. Forbes, George Forbes,* and *Dale L. Pohl,* all of Eureka, were with him on the briefs for the appellant.

*Robert M. Siefkin,* of Wichita, argued the cause, and *Kenneth P. Rockhill,* of Eureka, *George B. Powers, Carl T. Smith, John F. Eberhardt, Stuart R. Carter, Robert C. Foulston, Malcolm Miller, Robert N. Partridge, Richard C. Harris, Gerald Sawatzky, Donald L. Cordes, Robert L. Howard, Charles J. Woodin,* and *Mikel L. Stout,* all of Wichita, were with him on the briefs for the appellee, Lynn G. Braden.

*Donald R. Newkirk,* of Wichita, argued the cause, and *Wayne Coulson, Paul R. Kitch, Dale M. Stucky, Robert J. Hill, Gerrit H. Wormhoudt, Philip Kassebaum, John E. Rees, Robert T. Cornwell, Willard B. Thompson, David W. Buxton, Hugo T. Wedell,* and *Homer Gooing,* all of Wichita, were with him on the briefs for the appellee, Midwest Precote Company.

The opinion of the court was delivered by

HATCHER, C.: This appeal stems from an action brought by the plaintiff on behalf of his incompetent wife who suffered injury when the plaintiff missed a turn on a road and drove his automobile in which the wife was riding into a pile of dirt near the roadway.

The facts which disclose the circumstances and conditions from which the accident occurred will first be presented.

Prior to or during the year 1960, the State Highway Commission undertook a project to reroute highway U. S. 54 to the south of the city of Eureka, Kansas. Old highway U. S. 54 entered the city of Eureka from the west on River Street, turned to the north on Main

Street and proceeded north until it reached 7th Street where it again turned to the east and proceeded from that point in an easterly direction.

The new highway, after entering the city of Eureka from the west, proceeded straight east on River Street through the city. After leaving the city of Eureka going east the new highway paralleled the old highway for about three and one-half miles. At this point the new highway took a diagonal course to the northeast. It crossed the old highway at two different points. The two highways again made contact at highway K 99, where the new highway ended and the old continued. It was necessary to eliminate the old highway where it was to be crossed by the new. In 1960, the State Highway Commission caused a shoofly detour to be constructed around the old highway, commencing at a graveled county road and curving northeast to the end of the construction area. The old highway in the area was closed and the black-top surfacing removed.

The new highway was completed and opened to traffic on November 3, 1961, at which time the State Highway Maintenance Department removed all the U. S. 54 signs from the old route and placed U. S. 54 signs on the new route opening the same to public travel. A large oversized U. S. 54 sign with an arrow pointing straight ahead was placed at the intersection of River and Main Streets, Eureka, Kansas, where the old route had turned north. At the same time the State Highway Maintenance Department placed a barricade across the shoofly detour, and other warning signs, preventing travel thereon.

The defendant, Midwest Prescote Company, had a contract with the state to do some work on the new highway. It also had a contract with the state to eradicate the shoofly detour and remove a culvert that remained after the part of the old highway U. S. 54 had been abandoned and eradicated. The latter part of the contract had been subcontracted to the defendant, Lynn G. Braden. Braden had removed or eradicated and leveled the shoofly detour. He had removed the dirt from the culvert on the old abandoned highway preparatory to blasting the cement. The culvert was about eighty feet east of any roadway. The dirt was piled to the west and south of the culvert to be used as refill. The work was then interrupted by wet weather.

The old highway U. S. 54 leading out of the city of Eureka on

Main and 7th Streets had reverted to a county road. On the evening of November 22, 1961, the plaintiff was driving east through the city of Eureka on highway U. S. 54 with his wife as a passenger. He missed the straight ahead sign at the intersection of River and Main Streets and followed the old abandoned highway U. S. 54. He proceeded east on old U. S. 54 but missed a turn on a road leading down to the new U. S. 54, which was about 500 feet west of the point in controversy. Plaintiff proceeded east to where the old U. S. 54 met a county road and turned sharply to the left. He missed this turn and crashed into the pile of dirt. The pile of dirt prevented plaintiff from driving into a drainage ditch on the old abandoned highway. His wife was injured.

The petition alleged the formal requisites and the relationship of the defendants which read:

". . . At all times material hereto defendant Lynn G. Braden was acting within the scope of his agency with defendant Midwest Precote Company and was under the direction and control of said company, and all acts done, performed or omitted by said Lynn G. Braden were done, performed or omitted by him as an individual and as the agent of said Midwest Precote Company."

The petition further alleged:

"All the injuries and damages to Loretta Jean Schroder are the result of the negligence of defendants and their agents and servants in the following particulars, to-wit:

"A. In failing to place any warning signs along the state highway above described to warn approaching motorists of the embankment described across said highway.

"B. In removing the 'shoofly detour' around the embankment above described and the corresponding signs informing motorists of said detour, without replacing said signs with other information or warning signs showing that said detour had been removed.

"C. In failing to erect signs in the approach of U. S. Highway 54 to the City of Eureka to inform motorists that said U. S. Highway 54 had been re-routed.

"D. In failing to erect signs on said state highway (formerly U. S. Highway 54) for motorists traveling eastward from the City of Eureka to indicate that said highway was not open for continuous travel or that changes in said road were being made."

The petition was in two counts. The first count was for damages for injuries to the wife in the amount of $587,000. The second count was for damages to the husband resulting from loss of the wife's services, society, comfort, aid and assistance in the amount of $107,500.

The defendants filed separate answers denying negligence but alleging that if they were guilty of negligence the plaintiff was guilty of negligence in the numerous particulars usually charged to a driver which prevented recovery.

The case came on for trial and at the close of the plaintiff's evidence, the defendants filed separate demurrers thereto. The defendant, Midwest Precote Company, stated as reasons for its demurrer that the evidence showed no negligence on the part of the defendants but did show negligence on the part of the plaintiff, the driver of the automobile, and further:

"Under all of the evidence, when most favorably construed for the plaintiff, the evidence shows that the defendant Braden was an independent contractor and was not the agent of the defendant Midwest and, therefore, the negligence of Braden as a matter of law cannot be imputed to Midwest."

At this point the plaintiff, without requesting permission to amend his petition to conform to his proof, abandoned his theory of principal and agent relationship between the defendants. He accepted as established by his evidence the relationship of prime contractor and subcontractor between the defendants, and attempted to avoid the general rule of law that a principal contractor is not liable for the negligent acts of a subcontractor by contending that under the provisions of G. S. 1961 Supp., 68-2102 the principal contractor had an obligation to place certain signs and barricades and that responsibility for the obligation could not be subcontracted. The district court ruled that the statute did not apply to the principal contractor and sustained the demurrer.

The demurrer to the evidence filed by the defendant, Braden, was overruled and the trial continued as to him. The jury returned a general verdict in favor of Braden and answered the following special question:

"Do you find the defendant Lynn G. Braden was guilty of any act of negligence with which he was charged, which contributed directly and proximately to the collision.

"No."

The trial court approved the verdict and plaintiff has appealed.

The appellant suggests that judgment shall be reversed for the following reasons:

1. The erroneous overruling of the demurrer of the appellee, Midwest Precote, to appellant's evidence.

2. The erroneous admission of evidence informing the jury that a

similar action was pending against the state of Kansas for the same injuries in which the damages were alleged to be $45,000.

3. The trial court erred in not instructing the jury that G. S. 1961 Supp., 68-2102 applied to the work being performed after instructing in the language of the statute.

We will first consider whether there was a duty on the part of the appellees to place signs or barricades at the point where the accident occurred. If not, the other issues raised become immaterial.

The negligence of the appellees, if any, was the failure to place proper signs and barricades to warn the traveling public of dangers resulting from their work. The appellant contends that the appellees had an obligation to place signs and barricades where the accident occurred both under the common law and under the provisions of G. S. 1961 Supp., 68-2102 which reads:

"Every person who shall have entered into a contract to make any improvement, or any municipality which has undertaken for itself the making of any improvement, shall, where the work so undertaken requires the closing of any highway or the rendering of the same impassable or dangerous to travel while said improvements is being made, place at the intersection of all highways leading thereto, barricades and warning signs, advising the public that said highway is closed or is impassable or dangerous to travel. Such warning signs shall be illuminated in the nighttime by warning lights."

We find no Kansas cases dealing with the particular facts and circumstances which we have before us, either in the construction of the statute or the application of the common law. We are constrained to hold that the appellees were under no duty to place signs and barricades on the road or highway at the point of the accident either under the common law or the statute. The appellees were not making an improvement on a highway and they were not closing a highway as those terms are used in the statute. They were removing a culvert from a strip of highway which had been eradicated for over a year.

Whether the appellees were under an obligation to the traveling public to erect caution signs or barricades at the point where the accident occurred depends on the nature of the work and the place where it was being performed. These facts are not in dispute.

The new highway had been completed and opened for traffic. The State Highway Maintenance Department had removed all of the U. S. 54 signs from the old route and placed U. S. 54 signs on the new. Insofar as the traveling public was concerned the work

on both the old and the new U. S. 54 highway had been completed.

The work which the appellee, Braden, was to perform was the eradication of the shoofly detour and the removal of a bridge from a part of old U. S. 54 which had been abandoned. Barricades had been placed by the State Highway Department preventing travel on the shoofly detour. The eradication of the shoofly detour had nothing to do with the accident. It had been eradicated. It had been barricaded preventing travel by the general public. The appellee, Braden, had been working between the barricades on an abandoned detour. Harold L. Sturdevant, resident engineer for the State Highway Commission and a witness for appellant, testified:

"Q. Who did this? Who took the signs down?

"A. State Maintenance Force.

"Q. *Who required a barricade across the shoofly saying couldn't use it any more?*

"A. *I would say the State Maintenance Force put the signs up across here.* [Emphasis supplied.]

"The local men employed by the State Highway Commission is what we call Maintenance Department who puts up and maintains signs. They are the division that puts all new signs on any new construction. The new signs were put up on the new location of 54 on the afternoon of November 3 before traffic was routed over the new pavement.

"Mr. Siefkin: After this area was opened, was the shoofly to remain open or was it to be eradicated?

"A. It was to be eradicated in accordance with the contract—of the plan.

"Q. Show about 7th Street, the old U. S. Highway 54, what was going to happen to it where it left the shoofly?

"A. Old 7th Street on old 54 was reverted back to the County, and, of course, connected the county road—township road, I don't know of those to go north to the location here.

. . . . . . . . . . .

"Mr. Siefkin: Whose job is it to put up signs saying this is U. S. Highway 54 and this is a turn, and road under construction?

"A. It is the State Highway Commission's duty to mark the State Highway."

The work which the appellee Braden was performing at the time of the accident was the removal of a culvert on part of old highway U. S. 54 which had been abandoned and the black top removed. Braden was not working on or adjacent to a traveled road or highway. He was working some eighty feet to the east of any traveled road. The conditions of the road near which he was working had existed for over a year.

The highway department had known of the condition of the road at the point of the accident for a year and had done nothing about it. Appellant's position is in effect that appellees were obligated to maintain a higher standard of road markings than that maintained by the state's officials even though they were not working on the road. Appellees had no power or authority to abate the conditions which it is alleged made the old highway dangerous. They had no duty or power to control the state or county highway departments with reference to the standards of markings on the old highway.

The trial court should have ruled as a matter of law that appellant's evidence showed no duty on the part of appellees to construct signs or barricades at point of the accident either under the common law or by statute. However, the appellant is in no position to complain that the trial court permitted the case to go to the jury, and that the jury made the determination of no liability.

A careful examination of the record forces us to conclude that under the facts and circumstances disclosed by the evidence, there was no liability on the part of the appellees and there were no trial errors which would justify the granting of a new trial.

The judgment is affirmed.

APPROVED BY THE COURT.