No. 44,636

Donald L. Schroder, Guardian of Loretta Schroder, an insane person, *Appellee*, v. Kansas State Highway Commission, *Appellant*.

(428 P. 2d 814)

Opinion filed June 10, 1967.

*Barton E. Griffith,* Assistant Attorney General, argued the cause, and *John H. Morse,* Assistant Attorney General, and *Kenneth P. Rockhill,* of Eureka, were with him on the briefs for the appellant.

*George Forbes,* of Emporia, argued the cause, and *Harold G. Forbes* and *Dale L. Pohl,* both of Eureka, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Kaul, J.: This is an action brought by the plaintiff, Donald L. Schroder, on behalf of Loretta Schroder, his incompetent wife, who suffered injuries allegedly caused by a defect in a state highway. The jury returned a verdict for plaintiff in the trial below and defendant has appealed from orders of the trial court overruling motions for a directed verdict at the close of plaintiff's evidence, at the close of all the evidence, to set aside the verdict and judgment and for a new trial. Defendant also claims error with respect to three instructions submitted by the trial court.

On June 8, 1960, the State Highway Commission, hereafter referred to as defendant or commission, adopted a resolution relocating, changing and redesignating a segment of U. S. Highway 54 in Greenwood County, Kansas. The resolution described the new highway relocation and designated a described segment of the old highway and provided that such segment be maintained "as a detour highway until such time as the herein designated route shall be completed and open to traffic." The resolution also provided for the withdrawal of the replaced highway from the state system. The segment of the old road to be withdrawn from the

highway system amounted to about seven and one-half miles and the length of the new road was about six and two-tenths miles. Old U. S. Highway 54 entered the City of Eureka from the west on River Street and proceeded east to Main Street then turned north on Main Street and proceeded to Seventh Street where it turned to the east and proceeded in an easterly direction to the east city limits. From this point old U. S. Highway 54 proceeded in an easterly direction, it was crossed diagonally by the new location at a point about three and one-half miles east of the City of Eureka. The new location of U. S. Highway 54, instead of turning north at the junction of River and Main Streets in Eureka, proceeded east paralleling the old U. S. 54 for a distance of about three miles and then took a diagonal course to the northeast and crossed the old U. S. 54. As we have indicated, this junction is the scene of the accident in question.

There was a fill on the new U. S. Highway 54 at this point and a shoofly detour was constructed permitting traffic to cross the new highway during the construction period. The shoofly detour was surfaced with blacktop. Prior to November 3, 1961, there was a large barricade from six to eight feet high at a point where the shoofly detour connected with old U. S. Highway 54, which directed traffic to the northward up and over the shoofly. There were other signs warning the public concerning the detour and road construction. The road was labeled U. S. Highway 54 and all signs were in existence prior to November 3, 1961.

On November 3, 1961, at 10:30 a. m. the new U. S. Highway 54 was opened to traffic. On the same day, or prior thereto, the State Highway Maintenance Department removed all U. S. 54 signs from the old route and replaced U. S. 54 signs on the new route. Several witnesses for the defendant testified that included in these signs was a conventional U. S. 54 route marker with a directional straight ahead arrow placed on the south side of the highway on River Street and west of the intersection of River and Main Streets in the City of Eureka, and also a conventional size confirmation route marker east of the intersection. Two of defendant's witnesses testified the conventional route marker was replaced by an oversized sign on November 1, 1961. The time of placing the signs is in dispute. Defendant's employee Eddie Brothers erected the directional signs in question but could not remember when he did it. The plaintiff testified he saw no signs as he drove through the intersection the

night of the accident. He testified he went back three days later to see if he had missed a sign. On this point the plaintiff's testimony is narrated as follows:

"Three days after the accident when he was coming through Eureka on his way back to Rozel he went to the intersection of Main street and Highway 54 on the south end of Main street. He went there to find out if he had missed a sign when he came through there the night of the accident. There were no signs indicating U. S. Highway 54 went straight ahead. There were no signs at all."

Shortly after November 3, 1961, the defendant through its contractor, Midwest Precote Company, a Corporation, and its subcontractor, Braden Construction Company, began removal of the surface of the shoofly, the "tin whistle" underneath it and a culvert under the old U. S. Highway 54. In the process a large mound of dirt, about four and one-half feet high, was placed across old U. S. Highway 54 west of the culvert excavation. On the night of November 22, 1961, at about 9 p. m. the plaintiff drove his automobile into this mound of dirt and as a result Loretta Schroder suffered the injuries complained of.

Plaintiff brought an action against Braden, doing business as Braden Construction Company, and the Midwest Precote Company, which resulted in a verdict and judgment for defendant Braden, Midwest having been discharged from the action by a demurrer. The judgment and verdict were reviewed by this court on appeal in *Schroder v. Braden,* 193 Kan. 85, 391 P. 2d 1005. We held that plaintiff's evidence showed no duty on the part of *Braden* or *Midwest* to construct signs or barricades at the point in question, either under the statute or common law. In this connection it was stated in the opinion:

". . . Appellees (Braden and Midwest) had no power or authority to abate the conditions which it is alleged made the old highway dangerous. They had no duty or power to control the state or county highway departments with reference to the standards of markings on the old highway." (p. 91.)

We further stated the plaintiff was in no position to complain because the trial court permitted the case to go to the jury, since the jury made a determination of no liability. Under the circumstances pointed out later in this opinion the findings and holding in the *Braden* case are not determinative of the issues presented here. The effect of a defendant's verdict in *Braden* and a plaintiff's verdict in the case at bar accounts for some discrepancy between the two cases as to a few of the facts.

The mound of dirt in question had been piled up by *Braden* as a result of removing a culvert located at about the junction of the old U. S. Highway 54 and the shoofly detour. On old Highway 54 there was a crest of a hill about 765 feet west of the dirt pile, proceeding east about 100 feet the next landmark is a north-south access road connecting with the new highway and intersecting the old. The center line of the north-south access road was 575 feet west of the dirt pile. East of the north-south access road, a distance of about 500 feet, is a county road which turns north. The culvert removed was about 85 feet east of the center line of this county road and the dirt removed by *Braden* was piled to the west on the old highway roadbed, just east of the county road.

The pile of dirt in question was to be used as a refill for the excavation left by the removal of the culvert. There was evidence that the work in eradicating the shoofly and removal of the culvert was interrupted by wet weather.

On the evening of November 22, 1961, at about 9 p. m., the plaintiff was driving east on U. S. Highway 54 with his wife as a passenger. He followed the old route through the City of Eureka and proceeded east on the old road until he saw something in the road and realized it was a pile of dirt. He testified he was unable to avoid the collision with the dirt. His wife was seriously injured and taken to a hospital in Eureka.

Charles B. Williams, a state highway patrolman, arrived at the scene shortly after the accident. He testified he found plaintiff's automobile imbedded in a pile of dirt approximately thirty-five feet east of the county road which turned north. He further testified the only sign going east from Eureka on old U. S. Highway 54 was at the east edge of Eureka indicating the turnpike was so many miles. He did not find any signs, barricades or warning signs of any nature or the roadway. He found one A-frame and a 2 x 6 about eight to ten feet long in the north ditch, about 550 to 600 feet west of the accident scene, and an A-frame lying in the north ditch near the scene, but he did not find any sign or arrow on it. He did not find any glass or debris indicating a barricade had been struck by an automobile. While he was investigating the accident other cars came over the hill traveling rapidly and one car almost didn't get stopped in time. He called the police station to have the police check with Mr. Sturdevant (the resident highway engineer) because

he knew he needed signs or barricades at the location and he knew the engineer had them.

The first amended petition alleged the formal requisites, including service of notice of claim on the Director of Highways. It was further alleged that the complete blocking of traffic on the highway without any warning signs and without any access route being provided to circumvent the blocking, was a defect in said highway under the provisions of G. S. 1951 Supp. 68-419 (now K. S. A. 68-419), and that the State Highway Engineer and the Director of Highways had more than five days notice of the existence of such defect.

The trial court overruled a demurrer to the first amended petition and thereafter defendant filed its answer. In its answer defendant alleges that the relocated highway was completed and open to traffic on November 3, 1961, and was at all times thereafter duly marked as U. S. Highway 54; that between November 3 and November 10, 1961, all signs and markings on the detour highway were removed and at the time of the accident, on November 22, 1961, the area and place of accident was not a part of the state highway system and, therefore, defendant has no liability for the injuries and damages complained of. In its answer defendant further alleges that plaintiff and his wife were engaged in a joint enterprise and that the injuries of plaintiff's wife were sustained by reason of the negligence of plaintiff in the operation of his vehicle.

In his reply to defendant's answer plaintiff alleges that the part of old U. S. Highway 54 in question remained a part of the state highway system until the completion of the relocated highway and that even though the new highway had been opened to traffic it was not completed within the purview of defendant's resolution and that, therefore, the segment of the old highway upon which the accident occurred had not been removed or withdrawn from the state highway system.

Defendant demurred to plaintiff's reply. The demurrer was overruled by the trial court essentially on the ground that a question of fact existed as to whether the state highway commission had actually turned back the old highway to the county.

A pretrial conference was had and a pertinent portion of the pretrial order, which we believe fairly states the issues developed, reads as follows:

"Part of the issue to be resolved is whether or not a defect in the road existed by reason of the lack of warning of the discontinuance of the road, and whether or not the state highway commission was responsible for that lack of warning. The responsibility of the State Highway Commission is a mixed question of fact and law under the provision of G. S. 1961 Supplement, 68-406. Also, whether or not signs, barricades and warnings, if there were such, were sufficient to indicate what was State Highway 54, and as to the sufficiency of other barricades or warning signs as to the particular defect which is alleged to have been a cause of the accident, and whether or not the State Highway Commission had any liability or responsibility with reference thereto."

On January 5, 1965, the action proceeded to trial which terminated in a verdict for plaintiff in the amount of $15,000. Post trial motions were heard and overruled by the trial court and this appeal was duly perfected by defendant.

Essentially, defendant contends on appeal that the defect in question was not on a state highway within the purview of K. S. A. 68-419; that the accident was directly caused by plaintiff under circumstances for which defendant was not responsible; and that the trial court submitted three erroneous instructions.

At the outset we should point out that from our examination of the evidence and instructions the issues as to contributory negligence of the plaintiff and whether or not the pile of dirt, and alleged absence of warning signs or barricades, amounted to a defect have been resolved in favor of the plaintiff by the jury's verdict.

There remains then the controlling issue as to whether the defect was in a state highway at the time of the accident within the meaning of the statute. The questions raised by defendant with respect to the trial court's instructions are contained within this issue because defendant's objection to the court's instructions is primarily based on the premise that the issue is one of law rather than fact and should not have been submitted to the jury.

By way of preliminary framework it must first be pointed out that the liability of the commission is limited only to that which has been legislatively imposed by statute. The liability is predicated only on the existence of a defect and is not based on the law of negligence. ( *Cronin v. State Highway Commission,* 182 Kan. 42, 318 P. 2d 1066; *Lungstrum v. State Highway Commission,* 177 Kan. 57, 276 P. 2d 346; *Blessman v. State Highway Comm.,* 154 Kan. 704, 121 P. 2d 267; *Gorges v. State Highway Comm.,* 135 Kan. 371, 10 P. 2d 834.) These principles are so well-settled and firmly imbedded in our decisions that we believe further discussion unnecessary.

We turn then to consideration of the statutory liability imposed upon the commission with respect to the facts and circumstances reflected by the record in this case. Omitting prerequisites as to notice and other matters about which there is no issue here, the liability of the commission is declared in K. S. A. 68-419 as follows:

"Any person who shall without contributing negligence on his part sustain damage by reason of any defective bridge or culvert on, or defect in a state highway, not within an incorporated city, may recover such damages from the state; . . ."

The pertinent provisions of K. S. A. 68-406, the interpretation of which we are primarily concerned with here, are as follows:

". . . Highways designated under this act shall be state highways, and all other highways shall be either county roads or township roads as provided for elsewhere in the Kansas statutes. . . .

". . . [A]nd the state highway commission may mark and maintain existing roads used by it or which may be used by it as detours but which shall not be a part of the state highway system: *Provided,* That such roads shall be marked and maintained by the state highway commission only until that portion of the state highway system for which such road is substituted is completed and open for travel."

The difficult question of whether or not an alleged defect comes within the purview of the terms of 68-419, *supra,* was discussed in depth in the *Cronin* case. The question was said to be ordinarily a question of law and in summation it was stated:

". . . In many of our reported decisions the conditions prevailing have been held to be defects in the highway within the meaning of such statutes—in many others not. However, it may be said that throughout all of these cases we have steadfastly adhered to the proposition there is no legal footrule by which to measure conditions generally and determine with exact precision whether a condition constitutes a defect and that in the final analysis it is the fixed policy of this court to handle each case separately and to either include it in or exclude it from the operation of the statute. . . ." (p. 45.)

We agree with the principles announced in *Cronin* and find no reason to change or alter them. However, we do not hesitate to say that if the defect described here, *i. e.,* the pile of dirt completely obstructing the traveled portion of the highway allegedly without any warning signs or a barricade, if any, blocking only one traffic lane, was established by the evidence and the jury so found in this case; then the defect was clearly within the contemplation of the statute, as a matter of law. We have remaining then only the further question of whether or not such defect was on a state highway.

On this issue the commission bases its principal contention. The

issue may be reduced to the question of when and by what cause did old U. S. Highway 54 cease to be a state highway. It should be kept in mind the defect complained of was on the roadbed of old U. S. Highway 54 or in line with it and not on the shoofly detour which was new construction.

The commission advances two arguments to support its contention the accident did not occur on a state highway. It is first argued that the portion of 68-406, *supra,* which reads:

". . . [T]he state highway commission may mark and maintain existing roads used by it or which may be used by it as detours but which shall not be a part of the state highway system: . . ."

should be construed to mean the commission may designate any part of an existing highway as a detour and upon such designation immediately escape liability for any defects thereon. In other words, under the construction advanced as applied to this case the commission would have been immediately relieved of any liability for defects in old U. S. Highway 54 upon the adoption of the resolution of June 8, 1960.

Recognizing the principle that we have no right to enlarge the scope of the statute nor to amend it by judicial interpretation, we are nevertheless unable to apply the interpretation urged by the commission in this regard.

We find a more plausible and logical construction of the pertinent part of 68-406, *supra,* to be that the reference to "existing roads" was intended to indicate existing roads outside the state highway system. This construction we believe to be more in harmony with the further provisions of 68-406, *supra,* which read:

". . . Highways designated under this act shall be state highways, and all other highways shall be either county roads or township roads as provided for elsewhere in the Kansas statutes . . ."

The commission attempts to support its position on this point by the cases of *Lungstrum v. State Highway Commission,* supra, and *Summerville v. State Highway Comm.,* 139 Kan. 530, 32 P. 2d 224. In both cases the commission was held not to be liable for the reason that the defects complained of were on existing roads marked and maintained by the commission as detours. In *Summerville,* where a county road was taken over for use as a detour, it was stated:

"Whether the legislature has power to make the state liable for accidents due to defects on these temporary detours needs no present determination, but it has not done so, and has specifically limited liability to defects in roads that constitute a part of the state highway system. . . ." (p. 532.)

In *Lungstrum* the same principle was applied where the existing road taken over for use as a detour was a township road.

These cases support the established law that the state has no liability for defects on detours. The principle annunciated therein, however, is not applicable to the case at bar because, even though old U. S. Highway 54 was designated as a detour in the resolution, it was a state highway at the time and remained so until it was replaced by new U. S. Highway 54 on the completion and opening for travel thereof.

A logical reason for exempting the state from liability where it becomes necessary to reroute traffic on temporary detours during construction and to use county and township roads or to construct entirely new temporary roadways for such purposes is to protect the state from exposure to liability for defects when the use of such inferior roads, as detours, becomes necessary to implement the improvement and construction of highways in the state highway system. In *Summerville v. State Highway Comm.*, supra, the reasoning was expressed as follows:

". . . The state has given its consent to be sued for defects causing injury on the state highway system, but not on those happening on county and township roads. When repairs on the state system are necessary and the road is temporarily closed for that purpose, travelers are remitted to nearby county or township roads which are under the control of the county or township officers, and for defects on these units they are made liable by appropriate statutes. (Citing cases.)

". . . The limits of recovery are that the accident must have happened on a road which was a state highway, and this one happened on a county road. The fact that it was a detour over a county road was for the mere convenience of the public, but no authority was given to the state to pay damages arising from defects therein." (pp. 531, 532, 533.)

In the case at bar the road in question was not a county or township road or a road constructed by the state for temporary use as a detour. It was a state highway even though designated as a detour by resolution.

We shall next consider the all-important question, when did old U. S. Highway 54 cease to be a state highway and revert to Greenwood County? It is the commission's contention that such event took place at the precise time new U. S. Highway 54 was opened to the public at 10:30 a. m. on November 3, 1961. The plaintiff asserts, however, that the opening of a new highway to travel in and of itself is not enough to transfer the state's liability from the old to

the new. In support of this position plaintiff points out that both the statute (68-406) and the resolution of June 8, 1960, require not only the new road to be opened for travel but that it shall be completed.

The evidence is undisputed that considerable work remained on new U. S. Highway 54 after November 3, 1961, such as installing guardrail cable, guard fence, painting of guideposts, installing entrance pipes, and various other incidental work. According to the testimony of Harold Sturdevant, the resident engineer in charge of the project, this work was not completed until April 18, 1962. Sturdevant testified that within a few days after November 3, 1961, all of the warning signs on the old highway were removed. His testimony in part, as narrated in the record, is as follows:

"The State Highway Commission did not put any signs on the road to the west of the construction work to indicate that the road was no longer in existence other than a single barricade (referred to as a sawhorse barricade) in the north lane of traffic. It was the intention of the State Highway Commission to allow traffic to continue beyond the point of this barricade for those persons who may wish to turn north at the point of the construction work. The road was never closed. The road has subsequently been rebuilt in the approximate location of the old shoefly detour. The sawhorse barricade erected by the maintenance department was not designed to block the whole road and the south lane of traffic was left open for people who lived in that area. It was never the intention of the highway commission to stop traffic on the road.

"To the knowledge of the witness there was never any kind of barricade or sign blocking the south lane of traffic on old U. S. 54. To his knowledge there was never any sign from the edge of Eureka to the end of the blacktop on old 54 from the opening of the new road to the time of the accident, with the possible exception of the sawhorse barricade, which would have warned people that the road did not continue.   .   .   .

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"The Topeka office or the main office of the State Highway Commission was not informed that the project was completed until this engineer sent in his reports after April 18, 1962, at which time this engineer communicated with the division engineer with regard to the completion of the project on April 18, 1962.

".   .   .   The witness did not know whether or not the Chanute office of the State Highway Commission had communicated with the Greenwood County Commissioners and told them that this highway was turned back to the county on April 25, 1962."

We cannot agree with the assertion of plaintiff that old U. S. Highway 54 remained a state highway until April 18, 1962. We are inclined to believe the critical time factors to be the time at which the new road actually became open to travel by the public as a state highway and the time at which old U. S. Highway 54 was actually

withdrawn from public use as a part of the state highway system and the traveling public directed accordingly. As indicated in the pretrial order, the trial court adopted the theory that the question involved was one of mixed law and fact to be determined by the jury within the framework of the principles of law involved. The commission contends the question to be purely a matter of law. Neither party cites controlling cases. Resort to several decisions sheds considerable light on the issue.

In *Payne v. State Highway Comm.,* 136 Kan. 561, 16 P. 2d 509, a new highway was designated by the commission and, in an action alleging a defect therein, the question came before the court as to when the highway became open to public use and liability of the commission attached. In the *Payne* opinion the following statement appears:

"There may be a defect in a state highway before it is improved or constructed, but liability under the statute does not arise until such highway is open for travel. This is the fundamental basis of liability. Designation is the first step in the establishment of a state highway, but does not necessarily open it for travel. It is not open for travel until there has been extended to the public an invitation, expressed or implied, to use such highway. When a highway is open for travel may, under certain circumstances, be a question of law for the court. On the other hand, cases may arise where it would be a question of fact for the jury to determine under all of the circumstances of the particular case. It is clear to us that the legislature did not intend liability should arise against the state for defects on the mere designation of a strip of land as a highway. The construction of the highway must have reached a point where the ordinary prudent person would be warranted in believing that it was open to public use and a safe place to travel. . . ." (p. 565.)

In *Thummele v. State Highway Comm.,* 160 Kan. 532, 164 P. 2d 72, a resolution very similar to that herein was adopted by the commission pursuant to which a segment of U. S. Highway 50S near Kinsley was designated as a detour highway until a designated new route was completed and open for traffic. The accident in question occurred on the new project, prior to the time the new project was officially opened for public travel and when the old highway was still identified as U. S. Highway 50S. In adopting plaintiff's theory that the question of whether or not the new project was open to travel by implication was a question for the jury, it was stated in the opinion:

". . . Consequently, it is the opinion of the court that the statement hereinbefore quoted from the case of *Payne v. State Highway Comm.,* supra, is controlling and that the trial court was justified in submitting to the jury the

question, among others, whether the project had been opened for public travel by implication. In such connection it should be noted that under the evidence submitted it cannot be said, as a matter of law, that the condition of the project at the point of its intersection with the township road was such that it did not invite public traffic or that an ordinarily prudent person would not have been warranted in believing that the project was open and a safe place to travel. Such a question was for the jury. So far as the traveling public is concerned, a highway is open if by its condition it presents, in the mind of an ordinarily prudent person, an invitation to travel thereon. . . ." (p. 538.)

Applying what was said in *Thummel* and *Payne* to the case at bar we believe the evidence here to to be sufficient to raise real questions of fact as to whether or not the new highway was actually open, with adequate signs directing its use by the public, and whether or not the absence of adequate directional signs left an invitation to the public traveling U. S. Highway 54 to continue the use of the old highway.

In other words we do not believe, that under the evidence in this case, it can be said, as a matter of law, that as to the traveling public the segment of old U. S. Highway 54 in question had been withdrawn from the state highway system. Certainly, as was stated in *Payne,* the mere designation of a new location does not give rise to liability for defects thereon. Applying this principle to the instant case, the mere designation of a relocation does not relieve liability for defects in the existing highway until the traveling public has been adequately informed that the relocation has become the state highway and the existing highway has been withdrawn from the system.

The record reveals a sharp dispute as to the existence of the directional signs at the beginning of the new location on the date in question. Both the resident highway engineer and the highway commission maintenance supervisor testified that adequate directional signs were in place on November 3, 1961, and at all times thereafter. The maintenance supervisor further testified that on November 16, 1961, the conventional size confirmation U. S. route marker 54 and arrow thereunder were replaced with an oversized confirmation U. S. marker and arrow; that he made a personal inspection on said date and that the oversize signs were in place. As we have indicated, plaintiff testified to the contrary that there were no such signs in place on November 25, 1961, three days after the accident. The highway employee who erected the signs, Eddie

Brothers, as we have previously indicated, testified he did not know when he erected the signs.

A photograph of the intersection of Main and River Streets was received in evidence and identified as defendant's Exhibit 2. The date on which the photograph was taken is not shown in the record. When questioned concerning the photograph Brothers testified that a Skelly Oil Company service station shown to be on the southeast corner, adjacent to the directional sign, was not there when he erected the sign. He testified that at that time the lot was occupied by an old creamery building that was empty at the time with a large opening in the side. Paul Parks, called as a rebuttal witness for plaintiff, testified that he was the lessee of the Skelly Oil Company service station, that the location was occupied by an old creamery building until construction started on the Skelly station on February 14, 1962, at which time the creamery building was demolished. Parks further testified that the old creamery building was leased to one M. C. Wallace who used it for storage up until the time construction of the station started. From this testimony it appears the photograph was not taken until after the construction of the service station, which was not commenced until February 14, 1962. Some inference might be drawn, as plaintiff claims, that the sign was not erected until on or near that date since Brothers testified the building was empty when he erected the sign and Parks testified that Wallace had things stored in the building up until the time construction started.

Even though the weight of the evidence might appear to favor the defendant on this point, the jury has resolved the question in favor of plaintiff and we are bound thereby since we are compelled to view the evidence in the light most favorable to sustaining the verdict. (*Schroeder v. Richardson,* 196 Kan. 363, 411 P. 2d 670.)

Furthermore, since the plaintiff prevailed in this trial, the general verdict of the jury has resolved all issues of fact supported by the evidence in his favor. (*Blakey v. Zirkle,* 187 Kan. 562, 358 P. 2d 758; *Grisby v. Jenkins,* 183 Kan. 594, 331 P. 2d 284; *Dinsmoor v. Hill,* 164 Kan. 12, 187 P. 2d 338.)

The effect of the jury's verdict in the case at bar, under the instructions submitted, is not to be construed that the lack of adequate directional signs at the junction of the old and new highways was a defect within the terms of the statute but that by way of absence of such signs an invitation was left with the traveling public to con-

tinue using old U. S. Highway 54 upon which the defect existed for which liability attached. In this connection instruction 12A defined the liability of defendant as follows:

"You are instructed that if the defendant is liable to the plaintiff in this action it is by reason of a defective condition of the highway under the provisions of the state quoted and not by reason of negligence on the part of the defendant or its employees."

We have considered the instructions in their entirety and, with reference to instructions 13A, 17 and 18, to which defendant objected, we find the issues involved in those instructions to have been fairly submitted to the jury. Those issues were whether or not proper and adequate signs were sufficient to indicate to the traveling public that the new road was U. S. Highway 54 and that the old road was no longer U. S. Highway 54 and whether or not a dangerous condition existed at the place of the accident and if so had adequate warning signs been erected.

Instruction 18 properly informed the jury as to the defendant's duty concerning barricades with reference to a defect if one existed.

Lastly, defendant contends the accident was directly caused by plaintiff and under circumstances for which defendant was not responsible. The jury was properly instructed as to negligence, as to contributory negligence on the part of Loretta Schroder, as a passenger and as to causation. Pursuant to the instructions submitted and under the evidence adduced the general verdict of the jury resolved the issue of causation.

The judgment is affirmed.

FONTRON, J., dissenting.