(837 P.2d 835)

No. 67,072

MARKA L. FOUNTAIN, INDIVIDUALLY, AS HEIR AT LAW OF DAVID L. FOUNTAIN, DECEASED, AND AS NATURAL GUARDIAN AND NEXT FRIEND OF MEGAN L. FOUNTAIN, A MINOR, AND MORGAN L. FOUNTAIN, A MINOR, *Appellants,* v. SE-KAN ASPHALT SERVICES, INC., *Appellee.*

Opinion filed August 7, 1992.

*Zackery E. Reynolds* and *Blake Hudson,* of Hudson, Mullies & Reynolds, of Fort Scott, for appellants.

*Michael J. Dutton,* of Wallace, Saunders, Austin, Brown and Enochs, Chartered, of Overland Park, for appellee.

Before RULON, P.J., LEWIS, J., and DAVID J. KING, District Judge, assigned.

LEWIS, J.: This is an appeal of a wrongful death action filed by the widow and surviving children of David L. Fountain. Fountain was killed when his truck collided with a dump truck hauling asphalt on a rural, dusty, Miami County road. The plaintiffs sued Miami County (County), the road contractor, Se-Kan Asphalt Services, Inc. (Se-Kan), a subcontractor who owned the dump truck, and the driver of that truck. A settlement was reached with all the defendants, with the exception of Se-Kan. The trial court granted summary judgment in favor of Se-Kan, and the plaintiffs appeal.

The focus of plaintiffs' lawsuit is a road construction project. This construction project began when County issued bid materials for the "1988 Miami County Chip and Seal Project." The project entailed the chipping and sealing of approximately 45 miles of paved county roads. Se-Kan was awarded the contract on this project.

The "contract" between the County and Se-Kan consisted of three letters written from the county road supervisor to Se-Kan and a map showing the roads to be improved. There is very little detail in the so-called contract, but it does provide that Se-Kan is to be responsible for "traffic control."

Although a number of other roads were involved in the project, this case arises out of work being done on a highway known as John Brown Highway. John Brown Highway is a paved Miami County highway located just west of Osawatomie. The contract required Se-Kan to chip and seal a specified section of John Brown Highway.

The County agreed to supply the chip and seal materials from its own quarries. The asphalt used to chip and seal John Brown Highway was hauled by Se-Kan from a county quarry 2.6 miles from the construction site. Travel to and from the quarry to John Brown Highway was done over Indianapolis Road. Indianapolis

Road is a gravel county highway. Se-Kan's dump trucks traveled over Indianapolis Road to deliver asphalt to the construction project. Se-Kan had five to seven dump trucks continuously hauling asphalt from the quarry to the construction site. Some of these trucks were owned by Se-Kan, and others were owned by subcontractors. The truck involved in the fatal accident with Fountain was owned by a subcontractor.

Indianapolis Road was not mentioned in the contract documents and was not under construction or repair by Se-Kan. There is no indication in the record that the contract documents required Se-Kan to perform any duties insofar as Indianapolis Road was concerned. The road was the most direct route to and from the construction area, but was not mentioned in the agreement.

The accident happened on a hot, dry, day in late August. Under these circumstances, the truck traffic over Indianapolis Road created a dusty condition. The heavy dust raised by trucks and other vehicles traveling the road, at times, almost totally obscured the vision of drivers using Indianapolis Road. Fountain was an oil pumper and, apparently, was very familiar with Indianapolis Road. The record shows he was making his third trip of the day over the road at the time of the accident.

Under the conditions described above, Fountain's pickup collided head-on with a dump truck, and Fountain was killed. Although the evidence indicates the dump truck was two feet left of center, there is little question but that the heavy dust raised by trucks and other traffic on the road obscured the vision of both drivers and was a substantial contributing factor to the accident.

The plaintiffs' cause of action against the driver of the dump truck and its owner was based on the negligence of the driver. This action was settled against those defendants for $225,000. The action against Se-Kan and Miami County was based on the premise that these defendants had failed to make and keep Indianapolis Road safe for traffic. The suit against the County was settled for $90,000. Se-Kan refused to settle, and the matter continued on with its filing of a motion for summary judgment.

Plaintiffs contend that Se-Kan was negligent in failing to water Indianapolis Road to control the dust and in failing to put up signs to warn motorists about the dusty condition of the road.

The trial court held that Indianapolis Road was outside the construction site and that Se-Kan had no duty to water the road or post signs to warn the public. Accordingly, the trial court granted the motion for summary judgment filed by Se-Kan, holding there could be no negligence without the violation of a duty. Plaintiffs appeal from that ruling.

The question involved in this appeal is whether Se-Kan owed a duty to Fountain to control the dust on Indianapolis Road or to warn him of the dusty conditions. Plaintiffs contend this duty was imposed under several theories. Our responsibility is to analyze the theories proposed by plaintiffs and determine whether Se-Kan was or could be found to be guilty of violating a duty owed to Fountain.

## SUMMARY JUDGMENT

Before proceeding to the specific theories advanced by plaintiffs, we must determine our standard of review.

On this appeal, the issue is whether the trial court erred in granting Se-Kan's motion for summary judgment. Plaintiffs contend that Se-Kan had a duty to provide for the safety of motorists on Indianapolis Road because it was part of the construction site and it was Se-Kan who created the dangerous condition. In the face of those allegations, the trial court granted Se-Kan's motion for summary judgment.

The standard for summary judgment is well settled:

"Summary judgment is proper if no genuine issue of fact remains, giving the benefit of all inferences which may be drawn from the admitted facts to the party against whom judgment is sought. A trial court, in ruling on motions for summary judgment, should search the record to determine whether issues of material fact do exist. When summary judgment is challenged on appeal, an appellate court must read the record in the light most favorable to the party who defended against the motion for summary judgment. [Citation omitted.]" *Finkbiner v. Clay County,* 238 Kan. 856, 857-58, 714 P.2d 1380 (1986).

Ordinarily, questions as to negligence or contributory negligence are not subject to determination on summary judgment. This is true because the evidence and inferences, when construed in the light most favorable to the party defending against the motion, typically leave in question a genuine issue of material

fact. *Smithson, Executor v. Dunham,* 201 Kan. 455, 458, 441 P.2d 823 (1968).

This is not a typical negligence action. In this case, the facts are not seriously in dispute. The trial court concluded that, under the facts shown, no duty was owed by Se-Kan to plaintiffs and, as a result of that conclusion, granted the motion for summary judgment. *"Negligence exists where there is a duty owed by one person to another and a breach of that duty occurs.* Further, if recovery is to be had for such negligence, the injured party must show . . . a causal connection between the duty breached and the injury received." *Durflinger v. Artiles,* 234 Kan. 484, Syl. ¶ 1, 673 P.2d 86 (1983).

As indicated above, for negligence to exist, there must be a duty and a breach of that duty. If no duty exists, there can be no negligence. *Finkbiner,* 238 Kan. at 862. The existence of a duty is a question of law. *Hackler v. U.S.D. No. 500,* 245 Kan. 295, 297, 777 P.2d 839 (1989).

The question is whether the trial court was correct in holding that, under the facts shown, no duty was owed by Se-Kan to Fountain. Since this issue is one of law, our scope of review is unlimited.

## CONTRACTUAL DUTY

Plaintiffs argue that the contract between County and Se-Kan imposed a duty upon Se-Kan to maintain the safety of Indianapolis Road. They premise this argument on the following statement in the agreement: "Contractor is responsible for traffic control." Plaintiffs argue that this language placed a contractual duty on Se-Kan to control traffic on Indianapolis Road. We disagree.

As pointed out earlier, the agreement between the parties consisted of three letters and two maps showing the roads in Miami County. The comment concerning the responsibility for traffic control is in one of the three letters. There is no elaboration or explanation on what is meant by "traffic control" or where that control should be exercised.

" 'It is a fundamental principle that a court may not make a new contract for the parties or rewrite their contract under the guise of construction. In other words, the interpretation or construction of a contract does not include its modification or the creation of a new or different one. It must be construed and enforced according to the terms employed, and a court has no

right to interpret the agreement as meaning something different from what the parties intended as expressed by the language they saw fit to employ. A court is not at liberty to revise, modify, or distort an agreement while professing to construe it, and has no right to make a different contract from that actually entered into by the parties.' " *Fourth Nat'l Bank & Trust Co. v. Mobil Oil Corp.*, 224 Kan. 347, 353, 582 P.2d 236 (1978).

In construing the meaning of a contract, the appellate courts will not look beyond the four corners of the contract where the parties have reduced the agreement to written form and the document is unambiguous on its face. *Southwest Nat'l Bank v. Simpson & Son, Inc.*, 14 Kan. App. 2d 763, 770, 799 P.2d 512 (1990), *rev. denied* 248 Kan. 997 (1991). Whether an instrument is ambiguous is a matter of law to be decided by the court. *Godfrey v. Chandley*, 248 Kan. 975, Syl. ¶ 2, 811 P.2d 1248 (1991); *Snodgrass v. State Farm Mut. Auto. Ins. Co.*, 15 Kan. App. 2d 153, 157, 804 P.2d 1012 (1991). A contract is considered ambiguous if two or more meanings can be construed from the written language. *Albers v. Nelson*, 248 Kan. 575, Syl. ¶ 1, 809 P.2d 1194 (1991).

The question presented is what is meant by the words: "Contractor is responsible for traffic control." As pointed out above, the parties do not elaborate on what they mean by traffic control. We hold the provision of the contract quoted above is ambiguous. It is not clear from the written language if the contractor is to be responsible for traffic control only at the construction site or whether it is responsible for traffic control at some other area. Since the contract is ambiguous, we may look beyond the four corners of the agreement.

In resolving ambiguities, the intention of the parties, if ascertainable, should be given effect. *NEA-Goodland v. U.S.D. No. 352*, 13 Kan. App. 2d 558, 563, 775 P.2d 675, *rev. denied* 245 Kan. 785 (1989). On the facts shown, there is no difficulty in ascertaining the intent of the parties. The two individuals who were involved in the making of the agreement between the County and Se-Kan both testified as to their interpretation of the traffic control provision of the contract. The county road supervisor of Miami County testified that he never discussed with Se-Kan maintenance or traffic control on Indianapolis Road and that he interpreted the traffic control provision of the contract to apply

only to the actual construction site. The president of Se-Kan testified that he understood the traffic control provision to mean that Se-Kan would only be responsible for traffic around the actual worksite on John Brown Highway.

It is apparent from the record that neither party involved in the agreement believed the traffic control provision of the contract applied to Indianapolis Road. As we pointed out earlier, in resolving ambiguities, the intent of the parties must be given effect. There is no disagreement among the parties to the contract as to the meaning of the traffic control provision, and there is no genuine issue of material fact in dispute.

We conclude the trial court did not err in granting summary judgment in favor of Se-Kan on the issue of a contractual duty to control traffic on, or maintain, Indianapolis Road.

## STATUTORY DUTY

Plaintiffs next argue that Se-Kan had a statutory duty to the public in its use of Indianapolis Road.

We begin by observing that, apart from any duty or obligation which might be imposed on Se-Kan, the County had a continuing duty to maintain all its roads and highways in reasonably safe condition for the traveling public. This would include an obligation to maintain Indianapolis Road at the time of the accident. Indeed, our Supreme Court has held that the obligation to maintain public highways by a governmental entity is a nondelegable duty. *Trout v. Koss Constr. Co.,* 240 Kan. 86, Syl. ¶ 6, 727 P.2d 450 (1986). We have already concluded that the County did not seek by contract to share any of its nondelegable duties to maintain Indianapolis Road with Se-Kan.

Plaintiffs argue that such a duty may be found in the provisions of K.S.A. 68-2102, which read as follows:

"Every person who shall have entered into a contract to make any improvement, or any municipality which has undertaken for itself the making of any improvement, shall, where the work so undertaken requires the closing of any highway or the rendering of the same impassable or dangerous to travel while said improvement is being made, place at the intersection of all highways leading thereto, barricades and warning signs, advising the public that said highway is closed or is impassable or dangerous to travel. Such warning signs shall be illuminated in the nighttime by warning lights."

The argument by plaintiffs is that the statute does not limit the duty of a contractor to the highway under repair. They submit that the duty imposed by the statute extends to any highway made dangerous to travel during the construction project. This duty, plaintiffs insist, extended to Indianapolis Road.

Se-Kan argues that the operable words in the statute are *"where the work so undertaken* requires the closing of any highway." (Emphasis added.) It argues no work was undertaken on Indianapolis Road and that the statute only applies to the road under construction. We agree with the construction advocated by Se-Kan.

At issue is the breadth of the language in K.S.A. 68-2102. By its very terms, that statute places duties on contractors to take steps to protect the public in the area involved in a construction project. It clearly encompasses all roads under the contractor's control during a construction or repair project. The question is whether it also includes roads not involved in the project and not under the contractor's control and supervision. We think not. Under plaintiffs' theory, a contractor would be responsible for the safety of all roads used to travel to and from the construction site. This would extend the duties of road contractors to new heights far beyond those imposed by the construction agreement. We believe it would also extend those duties beyond the scope contemplated by K.S.A. 68-2102.

Miami County had a nondelegable duty to maintain Indianapolis Road in a reasonably safe condition. The principal duty to users of Indianapolis Road was already imposed on the County. This duty was owed to Fountain, to Se-Kan and its subcontractors, and all other users of Indianapolis Road. In view of this fact, we see no need to impose on Se-Kan an unlimited, unspecified duty to maintain all roads used in traveling to and from the construction site.

The Kansas Supreme Court dealt with K.S.A. 68-2102 in *Schroder v. Braden,* 193 Kan. 85, 391 P.2d 1005 (1964). In that case, the plaintiff's wife was injured when plaintiff, driving on an abandoned highway, hit a pile of dirt left by the defendants in removing an old shoofly detour and culvert. The road had been abandoned and the site of the accident was some distance

from the construction project. The plaintiff in *Schroder,* as here, sought to impose upon the defendants a duty under 68-2102. The Kansas Supreme Court held that no duty existed and said:

"We find no Kansas cases dealing with the particular facts and circumstances which we have before us, either in the construction of the statute or the application of the common law. We are constrained to hold that the appellees were under no duty to place signs and barricades on the road or highway at the point of the accident either under the common law or the statute. The appellees were not making an improvement on a highway and they were not closing a highway as those terms are used in the statute. They were removing a culvert from a strip of highway which had been eradicated for over a year.

"Whether the appellees were under an obligation to the traveling public to erect caution signs or barricades at the point where the accident occurred depends on the nature of the work and the place where it was being performed." 193 Kan. at 89.

As in *Schroder,* Se-Kan was not closing Indianapolis Road, nor was it making an improvement on it. As the Supreme Court points out, the duty to erect caution signs or barricades depends on the nature of the work and the place where it was being performed. In this case, Se-Kan was performing no work of any nature on Indianapolis Road and, hence, had none of the duties imposed by 68-2102 with regard to that road.

We find it inappropriate to extend the duties imposed by K.S.A. 68-2102 to a highway on which the contractor is nothing more than a traveler. Implicit in the *Schroder* decision is the concept that the duties are only imposed where the contractor has interfered with normal highway traffic by reason of repair or construction work performed on the highway in question. We will not extend those duties to include highways on which only travel takes place. If the legislature wishes to extend the statutory duties to include all roads traveled to and from a construction project, it may do so in more explicit terms. This would give contractors notice of an extended obligation and enable them to consider such extended obligations in bidding future projects.

We hold that the trial court did not err in holding that, under the facts of this case, Se-Kan had no statutory duty to maintain Indianapolis Road.

## COMMON-LAW DUTY

Finally, plaintiffs seek to impose a duty on Se-Kan under the

common law or under a theory of custom and usage. The trial court held that no such duty existed under the facts shown, and we hold that the trial court did not err in this conclusion.

In approaching the issue, it must be kept in mind that the duties plaintiffs seek to impose on Se-Kan are rather specialized. It is the position of plaintiffs that Se-Kan had a common-law duty to apply water to Indianapolis Road to control the dust or to post warning signs on the road. These duties are duties which are generally imposed on a contractor working on and in control of a construction site. Se-Kan, under the facts shown, did not occupy that position.

This is an issue of first impression in this state; that is, whether the common-law duties of an ordinary and prudent road contractor are imposed on Se-Kan under the facts shown. We hold that they are not.

We begin by reiterating that Indianapolis Road was not part of the construction project undertaken by Se-Kan. The duties and obligations of Se-Kan as a road contractor were confined to John Brown Highway. Indianapolis Road was not connected with the contract and remained under the exclusive control of the County. Under the facts shown, the County did not cede or agree to share any of that control. The evidence indicates that the County had the necessary equipment to apply water to Indianapolis Road and control the dust. It made no effort to do so. The county road supervisor testified that, to his knowledge, the county had never contracted with a road contractor to maintain a road which led from a quarry site to a construction site. The County did not do so because such an arrangement was too expensive.

There are no facts from which it can be inferred that Se-Kan had any road contractor responsibility for Indianapolis Road. Se-Kan was merely a user of Indianapolis Road. We see no basis for imposing the special duties of a road contractor on Se-Kan when its use of Indianapolis Road was limited to travel to and from the construction site.

We also conclude that Se-Kan had no common-law contractual duties on a highway outside of the construction area and over which it had no control. We are aware of no authority which places common-law road maintenance duties on a party which has no control over the road in question and no right to perform

maintenance duties on the road. Plaintiffs argue that Se-Kan had a duty to apply water to Indianapolis Road to control the dust. If we were to impose such a duty on all users of rural county roads made dusty by use, we would create an even greater danger than is caused by blowing dirt. Posting of unauthorized signs on a public highway is forbidden by K.S.A. 8-1512(a). We suspect the unauthorized application of water to a public highway is equally forbidden. It is certainly unlawful for an irrigator to sprinkle water on the roads. K.S.A. 68-184. It is unlawful to alter or obstruct the surface of public highways under K.S.A. 68-545. To carry out the duties plaintiffs seek to impose would have required Se-Kan to violate the law. We decline to impose any such duty under the principles of the common law or principles of custom and usage.

Se-Kan was not occupying the status of a contractor in traveling on Indianapolis Road. It was a user of that road and had only such duties and obligations as were imposed on other users of the highway. It had no greater or lesser duties than did the decedent. There is no doubt that Se-Kan was causing the dust to fly by its use of Indianapolis Road. It is common knowledge that travel on a dirt or gravel highway on a hot, dry day raises considerable dust. Decedent's own travel over the road no doubt contributed to the gathering dust. The duty to control that dust was imposed by law on Miami County. Only Miami County had the authority and right to maintain Indianapolis Road, and only Miami County had a duty to do so.

Plaintiffs presented considerable testimony on the duty of a reasonable and prudent contractor. Our conclusion that Se-Kan did not occupy the position of a contractor with regard to Indianapolis Road obviates the relevancy of such testimony. Expert testimony cannot create a duty not imposed by law.

Plaintiffs cite a number of cases which they contend are supportive of their position. We have examined the authority cited and find none stand as authority for the proposition put forth by plaintiffs. In the cases cited by plaintiffs, the duties to post warning signs, control dust, etc., were imposed where factually the defendant either had permission to post the signs or was in control of the area involved. Neither condition exists in the facts shown in this lawsuit.

Plaintiffs have cited us no decision, and we are aware of none, where the common-law duties of a road contractor have been applied in a situation where the road on which the accident took place was not part of the construction site and where the contractor was merely a user and traveler of that road.

Plaintiffs seek to impose on Se-Kan duties established by the Kansas Department of Transportation (KDOT) standard specifications. These specifications have no application to the instant project. The KDOT specifications were not mentioned in the contract between the parties and were not made specifically applicable to the construction site. In addition, the KDOT specifications for state road and bridge construction have no application to an accident which happened on a road not under construction and not under the control of the contractor. We believe the same comments are applicable to the Manual on Uniform Traffic Control Devices, the manual issued by the American Association of State Highway and Transportation Officials, and the Federal Motor Carrier Safety Regulations, all of which plaintiffs seek to make applicable to this county road project.

We hold that, under the facts and circumstances shown, the trial court did not err in holding that Se-Kan had no duty to water or post warning signs on Indianapolis Road.

Affirmed.