No. 26,583.

DAISY B. SNYDER, *Appellee*, v. THE BOARD OF COUNTY COMMIS-
SIONERS OF THE COUNTY OF POTTAWATOMIE, *Appellant*.

SYLLABUS BY THE COURT.

1. HIGHWAYS—*Injuries from Defects—Liability of County—Evidence—Special
   Findings*. The proceedings considered in an action against a county for
   damages for death of an automobile driver caused by negligent omission to
   install a guard rail or warning sign at a curve in a highway rising on a
   graded approach to a railroad crossing, and *held*, special findings of the
   jury establishing liability were sustained by the evidence, and certain of the
   findings were not inconsistent with those establishing liability.

2. COUNTIES—*Capacity to be Sued—Death Caused by Defective Highway*. A
   county is liable to a person qualified to sue under the statute relating to ac-
   tions for death by wrongful act or omission, for damages sustained by such
   person on account of the death of another, caused by a defective highway.

Appeal from Pottawatomie district court; MARTIN A. BENDER, judge. Opin-
ion filed April 10, 1926. Affirmed.

*W. F. Challis* and *William E. Smith*, both of Wamego, for the appellant.

*B. P. Waggener*, of Atchison, *Ira C. Snyder*, of Manhattan, *A. E. Crane* and
*B. F. Messick*, both of Topeka, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one for damages resulting from death
of plaintiff's husband, caused by a defective highway. Plaintiff re-
covered, and defendant appeals.

At a point about 500 feet east of the highway and railroad bridges
across the present channel of the Blue river east of Manhattan,
highway U. S. 40, heretofore called the Union Pacific highway,
crosses the Union Pacific railroad right of way and track. The right
of way is 100 feet wide and the track is laid in the center. The
highway is 40 feet wide, and from the bridges to the crossing ad-
joins the right of way on the south. The highway crosses the right
of way at a right angle from south to north, and then extends east-
ward along the north side of the right of way. From the bridges to
the crossing and beyond the railroad track is laid on a fill, which at
the crossing is 6 feet higher than the surface of the highway at the
south side. The traveled portion of the highway, which varies in

Counties, 15 C. J. p. 571 n. 82. Death, 17 C. J. pp. 1185 n. 34, 1269 n. 54,
1318 n. 30. Highways, 29 C. J. pp. 673 n. 87, 685 n. 43, 718 n. 51, 724 n. 2; 39
L. R. A. 53; 42 L. R. A. n. s. 267; L. R. A. 1915F, 973; 27 A. L. R. 721; 36
A. L. R. 413; 2 A. L. R. 721.

width from 28 feet to 24 feet, curves sharply to the left around a power pole standing at the corner of the right-of-way fence, and rises to the top of the railroad fill on a graded approach. At the base of the approach on each side is a ditch. The embankments thus formed grow quite steep as they become higher, and were not protected at the time of the accident by guard rail or warning sign or directional marker.

On the morning of April 18, 1924; plaintiff and her husband left Alma, Neb., for Topeka, Kan., in an automobile. They arrived at Manhattan about eight o'clock in the evening, and decided to go on. Mr. Snyder was driving the car. When the railroad crossing which has been described was reached, Mr. Snyder did not turn to the left quite soon enough. While the car followed the curve of the road, it was too far toward the east. The right wheels were over the shoulder of the grade, and the left wheels were about where the right wheels should have been. The car proceeded up the approach about fifteen feet, when the left wheels left the ground, the car turned over, and Mr. Snyder was killed.

The jury returned the following findings of fact:

"1. Q. Were there guard rails on the east side of the approach from the south to the crossing over the railroad track on the public highway where Oscar E. Snyder was killed April 18, 1924? A. No.

"2. At the place where the automobile of Oscar E. Snyder went over the grade on the east side of the approach to the crossing of the railroad on the public highway, was there a drop-off and ditch? A. Yes.

"3. If you answer the foregoing question 'yes,' give the depth of said drop-off and ditch together. A. Six feet.

"4. At what rate of speed was the automobile of Oscar E. Snyder being driven when it went off of the east side of the approach to the crossing of the railroad track at the time he was killed? A. At a reasonable rate of speed.

"5. Did F. J. O'Daniel, chairman of the board of county commissioners of this county, frequently drive over the public highway at the place where Oscar E. Snyder came to his death, while acting as chairman of said board of county commissioners? A. Yes.

"6. Did the said F. J. O'Daniel, while acting as chairman of the board of county commissioners of this county, and for more than five days before the accident complained of occurred, have actual notice of the condition existing on the east side of the approach to the crossing of the railroad tracks and the public highway at the place complained of? A. We believe he did.

"7. In the condition you find said approach in at the time complained of, was it unsafe and dangerous to persons traveling on said highway from the west in the nighttime in an automobile? A. Yes.

"8. Was the deceased, Oscar E. Snyder, or his wife, negligent in the manner in which they were traveling on the public highway at the time Oscar E. Snyder met his death? A. No.

"11. Could the plaintiff, or driver, or either or both of them, have seen the turn in the road before reaching it, had they exercised ordinary care and watchfulness? A. Yes, they could have seen it.

"12. How fast was the car being driven when it reached the turn in the road? A. At a reasonable rate of speed.

"13. How wide was the traveled part of the road at the place where the car left it? A. About twenty-one feet.

"14. Was the low ground or so-called ditch within the limits or outside of the forty-foot highway? A. Within the forty-foot limits.

"15. Was the road defective at the point where the accident occurred? A. Yes.

"16. If you answer the foregoing question in the affirmative, state of what such defects consisted? A. No guard rail or warning signs.

"17. Was there a sufficient amount of the entire width of the road maintained in a safe and passable condition to serve the reasonable needs of the public at the place where the accident occurred? A. Yes."

Whether due care required a guard rail or warning sign at the place of the accident was a fair question for the jury. Another accident occurred at the same place about six weeks before Mr. Snyder's death. Soon after his death the embankments were properly safeguarded. Actual notice of the defect to the chairman of the board for the statutory length of time was established by the chairman's own frank testimony. Whether plaintiff or the driver of the automobile was guilty of contributory negligence was a question for the jury. While plaintiff and the driver could have seen the turn in the road before reaching it (finding 11), there was nothing to warn them that unless they turned sharply they would be trapped by the embankment; and the defect in the highway lay, not in the condition of the traveled portion of the way, which was wide enough (findings 13 and 17), but in the absence of a guard rail or warning sign.

Defendant contends plaintiff is not authorized to maintain an action against it for death of her husband caused by defect in the highway. Lord Ellenborough's famous declaration that, in a civil court, death of a human being could not be complained of as an injury (*Baker v. Bolton*, 1 Camp. 493), no longer states the law:

"When the death of one is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action therefor against the latter, if the former might have maintained an action had he lived, against the latter for an injury for the same act or omission." (R. S. 60-3203.)

When, as in this instance, no personal representative has been appointed, the widow may sue. (R. S. 60-3204.) At common law

the county was not suable for wrongful acts or omissions of its officers causing injury whether by death or otherwise. The common law no longer prevails with respect to injuries resulting in damages occasioned by defects in a highway:

"Any person who shall without contributing negligence on his part sustain damage by reason of any defective bridge, culvert or highway may recover such damage from the county or township wherein such defective bridge, culvert or highway is located. . . ." (R. S. 68-301.)

The liability under both statutes is for compensatory damages. Mr. Snyder's death was caused by wrongful omission of the county to remedy a defect in the highway. Through death of her husband, plaintiff sustained damages by reason of the defect. The common-law inhibitions upon liability of the county and upon privilege to enforce that liability have both been removed, and defendant's contention is not well founded.

The judgment of the district court is affirmed.