[No. 30965.   Department Two.   July 29, 1949.]

HARVEY BROWN PHINNEY et al., Respondents, v. THE CITY OF SEATTLE, Appellant.[1]

[1]Reported in 208 P. (2d) 879.

A. C. *Van Soelen* and *Arthur Schramm,* for appellant.
*Padden & Moriarty* and *Ivan Merrick, Jr.,* for respondents.

GRADY, J.—This action was brought by Harvey Brown Phinney and Gladys Rose Phinney, husband and wife, against the city of Seattle and Robert W. Bagshaw and Charlotte E. Bagshaw, husband and wife, to recover damages for personal injuries and property damage as a result of an automobile collision at a street intersection in the city of Seattle. The case was tried before the court and a jury and resulted in a verdict for the plaintiffs against the city of Seattle. A judgment was entered upon the verdict and the city has taken this appeal.

At the time of the accident, Delridge way was an arterial highway within the limits of the city of Seattle and had been designated as such by city ordinance. This arterial highway ran approximately in a northerly and southerly direction and was intersected by West Orchard street, which ran in an easterly and westerly direction. After the designation of Delridge way as an arterial highway, the appellant erected and maintained near the southwest corner of the intersection a sign requiring traffic on West Orchard street to stop before entering Delridge way. For a period of thirteen days prior to the day of the accident, the stop sign was down and lying by the highway but hidden by tall grass and weeds. The respondents were driving their automobile east on West Orchard street, and the defendants were driving their automobile south on Delridge way. The two auto-

mobiles collided at the intersection of the two highways. The jury found by its verdict that the sole proximate cause of the accident was the negligence of the appellant in the maintenance of the stop sign. The appeal is before the court on an agreed statement of facts and the only questions presented are: (a) whether placing and maintaining a stop sign at a street intersection, by and within a city, is a governmental function, and (b) whether such city is liable in damages to the user of one of the streets who is injured because of the negligent failure to maintain such stop sign. Our answer to each question is in the affirmative.

Rem. Rev. Stat., Vol. 7A, § 6360-106 [P.P.C. § 295-63], provides that cities shall have the power to determine and designate intersections of streets within their limits at which vehicles shall be required to stop before entering such intersection. The act further provides:

" . . . and upon the determination and designation of such points at which vehicles will be required to come to a stop before entering such intersection, the proper authorities so determining and designating shall cause to be posted and maintained proper signs of the standard design adopted by the director of highways indicating that such intersection has been so determined and designated and that vehicles entering the same are required to stop. . . ."

By this statute the state has issued a direct command to its cities not only to post the stop signs but also to maintain them. As applied to the situation in this case the legislative purpose was to require the appellant to afford the users of Delridge way protection by requiring the users of West Orchard street to stop before entering thereon, and thus have an opportunity to observe the traffic on Delridge way; and, also, to warn users of West Orchard street of the presence of a favored highway.

In the absence of a statute, a city would not be obligated to post or maintain any stop signs at street intersections, but if it does so of its own accord, it performs a governmental function under its police power, and, according to the rule adopted by this court, would not be liable in damages to users of the streets for its negligence in failing to

maintain stop signs. *Hagerman v. Seattle,* 189 Wash. 694, 66 P. (2d) 1152, 110 A. L. R. 1110, and cases cited; *Crowley v. Raymond,* 198 Wash. 432, 88 P. (2d) 858.

Rem. Rev. Stat., § 6362-41a, gave the same authority to counties as § 6360-106 gives to cities, and that statute and § 6308-3 made substantially the same command with reference to stop signs at highway intersections within such counties. In *Lyle v. Fiorito,* 187 Wash. 537, 60 P. (2d) 709, this court considered the effect and application of §§ 6362-41a and 6308-3, which had been violated in substantially the same manner as § 6360-106 was in this case. The statute did not in express terms give a right of action to any one injured because of the neglect of the county to maintain the stop sign as required by it. The trial court instructed the jury that, as the county had established the street as an arterial highway, it was its duty to maintain stop and warning signs on the intersecting street. No question was raised in the trial court or in this court that the county had immunity because, in the maintenance of stop signs, it was performing a governmental function, nor was liability claimed because of Rem. Rev. Stat., § 951 [P.P.C. § 88-3], giving a right of action against a county arising from some act or omission of such county, and which we have decided abrogated the common-law rule of immunity in the performance of governmental functions by counties and school districts. (*Howard v. Tacoma School Dist. No. 10,* 88 Wash. 167, 152 Pac. 1004, Ann. Cas. 1917D, 792.) Both the trial court and this court on appeal definitely decided that liability arose because the county failed to obey the mandatory direction of the statute.

The appellant has cited a number of cases from other states adopting the immunity rule with reference to the voluntary maintenance of lights as warning signs at street intersections, but it is interesting to note that in some of them, particularly *Dorminey v. Montgomery,* 232 Ala. 47, 166 So. 689, and *Martin v. Winchester,* 278 Ky. 200, 128 S. W. (2d) 543, when discussing the immunity rule it was observed that there was no statutory duty imposed upon the

cities to maintain traffic signal lights, and hence such cities were not negligent in failing to keep such lights in repair.

We are of the opinion that the legislature intended by Rem. Rev. Stat., §§ 6362-41a and 6308-3, and later by § 6360-106, to authorize counties and cities, in view of their special knowledge of their local traffic conditions and safety needs, to determine and designate which roads and streets should be arterial highways, and whenever such action was taken to require such counties and cities, not as agents of the state but strictly on their own account, to erect and maintain stop signs; also that the legislature intended that if the counties or cities failed to comply with its mandate they would be liable in damages to users of the highways injured by such default. The plenary power of the state over its counties and cities is such that it has authority to command them to safeguard the users of highways within their respective limits in the manner prescribed by the statutes above cited.

The questions we have before us have been similarly met in principle in the case of *City of Wooster v. Arbenz,* 116 Ohio St. 281, 156 N. E. 210, 52 A. L. R. 518. The case involved the liability of a city for the negligence of the driver of a truck employed by it and engaged in hauling cinders for the repair of one of its streets. The court recognized the doctrine of immunity of a municipality in the performance of governmental functions, as well as the rule of liability if the function being exercised was proprietary and in pursuit of private and corporate duties for the particular benefit of the corporation and its inhabitants as distinguished from those things in which the whole state had an interest. The court pointed out that, by virtue of the statutes of the state of Ohio, the duty had been cast upon the cities to keep its streets open, in repair, and free from nuisance, and in doing so a city was in the performance of a governmental function, and said:

"By that enactment [Sec. 3714, General Code] the Legislature of Ohio has removed all doubt as to the public character of streets and alleys within municipalities, and by the same token it has become firmly established that the main-

tenance of streets, alleys, and other highways is the performance of a governmental function. By virtue of Section 3714 the duty has been enjoined upon municipalities to keep streets and alleys open, in repair, and free from nuisance, and it follows from that that they may be made to respond in damages for a failure so to do."

The court then observed that such a statute, being in derogation of the common law, must be strictly construed, and decided that it could not be extended to make the municipality liable for the negligence of its servants while engaged in the act of making improvements to its streets and alleys, and as that was what was being done when the accident occurred, the city was not liable.

The theory of the decision is that, even though the function may be governmental in character, if the statute commands performance by the city and such command is disobeyed, the city is liable for resultant damages to injured users of the highway, though in the absence of such statute there would be no liability. The case has been cited and approved in subsequent opinions of the Ohio court and in *Mardis v. Des Moines,* 34 N. W. (2d) (Iowa) 620.

█ We therefore hold that the respondents had a right of action for damages against the appellant because of its disobedience of the statutory command made upon it by the state.

The judgment is affirmed.

JEFFERS, C. J., ROBINSON, SIMPSON, and SCHWELLENBACH, JJ., concur.

---

September 12, 1949. Petition for rehearing denied.