No. 45,084

Eugene Brown, personally, and as Husband and one of the Heirs of Evelyn Brown, deceased; as Father and Heir of Paul Kelly Brown, deceased; and as Father and Next Friend of Jacqueline Brown, Roberta Brown and Kathryn Brown, *Appellee,* v. State Highway Commission of Kansas, *Appellant.*

(444 P. 2d 882)

Opinion filed September 3, 1968.

*Barton E. Griffith,* Assistant Attorney for the State Highway Commission, argued the cause, and *John H. Morse,* Chief Attorney, *Warren W. Wagoner,* Assistant Attorney, and *Douglas B. Myers,* of Dodge City, were with him on the brief for the appellant.

*Don C. Smith* and *Camilla Klein Haviland,* both of Dodge City, argued the cause, and *R. R. Mitchell* and *David L. Patton,* both of Dodge City, were with them on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is a damage action resulting from a state highway intersection collision involving three vehicles, wherein the jury returned a verdict in the total sum of $102,029.79 against the State Highway Commission of Kansas. Appeal has been duly perfected.

The primary question is whether a defectively installed or obstructed stop sign at the side of a state highway, designed to control approaching traffic on a county road which intersects the state highway, is a defect in the state highway which comes within the purview of G. S. 1961 Supp. (now K. S. A.) 68-419.

The majority of the members of this court hold that a stop sign on the side of a state highway, which is defectively installed or obstructed from view so that it is inefficient to convey the message intended to control traffic entering the state highway from a county road, is within the purview of 68-419, *supra;* that is, it is embraced within the term "defect in a state highway."

The case was tried to a jury in the lower court on the theory that

the defectively installed or obstructed stop sign in question was within the purview of the statute, and that it was a question of fact for the jury to determine from the evidence in the case upon the instructions given whether or not a defect existed in the state highway, and, if so, whether it was the proximate cause of the resulting injuries and damage.

Inasmuch as the jury resolved all fact questions in favor of the plaintiff, the facts will be stated from the evidence most favorable to the plaintiff.

The intersection in question is dangerous. A good, elevated, hard-surfaced county road known as the Coronado Bridge Road intersects a high speed state highway known as U. S. No. 154, approximately two and one-half miles east of Dodge City. The highway carries traffic from Dodge City toward Greensburg, Pratt, Kingman and Wichita. There was a stop sign on the state highway in the southeast part of the intersection within the highway right-of-way facing northbound traffic on the county road. A shelter belt on private property south of and parallel to the state highway right-of-way extended west from the county road. There was a cluster of bush-like trees or shrubs growing on the east side of the traveled portion of the county road located approximately one hundred to one hundred fifty feet south of the intersection (giving the minimum distance testified to by the witnesses) obstructing view of the stop sign. The obstruction was described by witnesses in various ways: a tree, a sort of second growth bush-like tree, a bushy tree. The size of the obstruction was not made clear by the evidence. One witness described it as being about twelve feet across and about twelve to fourteen feet high. Another described it as a slight little bush.

About noon on the 23rd day of June, 1963, William Morris Eggleston of Mt. Ida, Arkansas, an itinerant farm laborer with a blind right eye, was driving his 1953 Ford automobile north on the Coronado Bridge Road on his way to Jetmore, Kansas. At the same time Eugene Brown was driving east on U. S. Highway No. 154 with his family enroute to Bucklin. Also, Don Vogel was driving west on U. S. Highway No. 154 on his way to Dodge City. Eggleston failed to see the stop sign heretofore mentioned and drove into the intersection without stopping. He collided with the Brown automobile, thereby in turn causing it to collide with the Vogel automobile.

Mrs. Brown and one son were killed in the accident, and the other occupants of the Brown vehicle were injured.

There was no crossroad sign on U. S. Highway No. 154 warning the driver of the Brown vehicle of the crossroad in question, and there was no "stop ahead" sign placed on the county road warning travelers on the county road of the stop sign at the intersection in question.

There was testimony to the effect that the stop sign in question could not be seen by a motorist traveling north on the county road until he was even with the cluster of bush-like trees or shrubs. Eggleston testified he did not see the stop sign at all and was not aware that he was approaching an intersection of a state highway until it was too late to stop. Other witnesses who were familiar with the intersection said they stopped because they knew a stop sign was there, but the stop sign could not be seen in time to stop.

The action was filed by Eugene Brown to recover damages for the death of Evelyn Brown, for the benefit of himself as her husband and his four surviving minor children; by Eugene Brown as sole heir of Paul Kelly Brown, a minor, to recover damages for his death; by Eugene Brown as next friend of David Brown, Jacqueline Brown, Roberta Brown and Kathryn Brown, minors, to recover damages for injuries sustained by each of them; and by Eugene Brown to recover for his own injuries and damages.

The original defendants were the Board of County Commissioners of Ford County, against which damages were claimed under G. S. 1949 (now K. S. A.) 68-301 by reason of an alleged defect in a Ford County road known as the Coronado Bridge Road, and the State Highway Commission of Kansas, against which damages were claimed under 68-419, *supra,* by reason of an alleged defect in a state highway known as U. S. No. 154.

On the 22nd day of April, 1966, on motion of the plaintiff the action against Ford County was dismissed without prejudice. Subsequently the State Highway Commission sought leave to file and serve a third party petition interpleading Ford County as a third party defendant, but this was denied by the trial court. In the third party petition the State Highway Commission alleged, among other things:

"On June 9, 1951, an agreement was made and entered into by and between the State Highway Commission of the State of Kansas and the Ford County Commissioners of Ford County, Kansas, wherein the State Highway Com-

mission was to act as and did act as agent for said County to enable said County to participate in federal aid funds for secondary roads. Said agreement specifically provides a hold harmless clause for the protection of the State Highway Commission from any liability arising due to defects and all other matters pertaining to said secondary roads. A true and exact copy is marked Exhibit 2, attached hereto and made a part hereof."

The action was first tried in November, 1966, but the jury was discharged and a new trial ordered when the jury could not agree upon a verdict. The second trial to a jury resulted in a verdict for the plaintiff upon which judgment was entered.

Without burdening this opinion with procedural matters it may be said the State Highway Commission, by its various motions throughout the trial of the case, made a record sufficient to raise the questions hereinafter considered.

Among the admissions pertinent to this appeal disclosed by the pretrial order are the following:

"4. The defendant further admits that there was no crossroad ahead sign on No. 154 to apprise eastbound traffic of a crossroad on June 23, 1963.

"5. Defendant further admits that the maintenance department of the State Highway Commission has a duty to maintain and place traffic control devices.

"6. The defendant further admits that the Uniform Traffic Control Manual prescribes standards for traffic control devices.

"7. Defendant further admits that No. 154 is a through highway and that when stop signs are placed, they must conform to the standards set out in the Uniform Traffic Control Manual.

"8. The defendant further admits that it has an absolute duty to conform to the rules set out in this Manual.

"9. Defendant further admits that the shelter belt obstructs the vision of the northbound and eastbound traffic on the Coronado Bridge Road and No. 154 until they are in the intersection.

"10. Defendant further admits that it has a duty to place and maintain traffic control devices at this intersection.

"11. Defendant further admits that there was no stop ahead sign placed south of the stop sign in question.

"12. Plaintiff admits that the tree in question was not on state highway right of way.

"13. Plaintiff admits the state has no duty to maintain traveled portion of Coronado Bridge Road."

The pretrial order set forth the issues of fact to be determined by the jury as follows:

"1. Was the stop sign in question erected at the height required by the 'Manual on Uniform Traffic Control Devices'?

"2. Was the negligence of William Eggleston, the driver of the car which struck plaintiff's car, the proximate cause of the collision and injuries to plaintiffs?

"2. (a) Was the defect a or the proximate cause of the collision?

"3. Was Eugene Brown guilty of contributory negligence?

"4. Was the negligence of Eugene Brown a proximate cause of the collision and injuries?

"5. What damages are plaintiffs entitled to recover?"

The pretrial order also set forth the following issues of law to be determined by the court:

"1. Was the condition surrounding the stop sign a highway defect as contemplated by 68-419?

"2. Once the defendant has constituted No. 154 as a through highway by the erection of stop signs, does it then have complete discretion as to the maintenance of existing signs as well as the erection of additional traffic control signs."

The trial court by instruction No. 2 informed the jury of 68-419, *supra*, by quoting the pertinent portion thereof, and advised the jury that the statute does not impose liability for general negligence, but imposes a liability created by statute for a defect in a state highway. The trial court then instructed the jury:

"No. 2-A

"You are instructed that the duty of the State Highway Commission in regard to traffic control devices is established by law. The law, K. S. A. 8-511 states 'Traffic-control devices on state highways. (a) The state highway commission shall place and maintain such traffic-control devices, conforming to its manual and specifications, upon all state highways as it shall deem necessary to indicate and to carry out the provisions of this act or to regulate, warn, or guide traffic.'

"No. 2-B

"You are instructed that the manual on 'Uniform Traffic Control Devices for Street and Highways' adopted by the State Highway Commission of Kansas on March 28, 1962, provides as follows:

"Rule 1A-22    Height

"Signs erected at the side of the road in rural districts shall be mounted at a height of at least 5 feet above the level of the roadway edge, measured to the bottom of the sign. . . .    and in any case where parking is likely to occur or where there are other obstructions to view, the height shall be at least 7 feet.

"Rule 1B-9    Location of Stop Sign and Yield Sign

"In the event the visibility of a Stop sign  . . .  at any location is restricted, the sign shall be located as specified, and a Stop Ahead sign  . . .  shall be erected in advance of the Stop or Yield sign.

"Rule 1A-28    Maintenance

"Special care should be taken to see that weeds, shrubbery construction materials, and snow are not allowed to obscure the face of any sign.

"Rule 1C-14    Stop Ahead Sign

"The Stop Ahead sign shall be used in advance of a Stop sign . . . that is not visible for a sufficient distance to permit the driver to bring his vehicle to a stop at the Stop sign. Obstruction of view due to . . . foliage, . . . should be considered in determining the need for the erection of this sign.

"Rule 1C-10    Cross Road Sign

"The Cross Road sign, showing a vertical cross symbol, shall be erected on a through highway to indicate the presence of a cross road. (The manual indicates that this sign should not be used indiscriminately, and that criteria warranting its use are poor sight distance, obscured entrances, and cross roads carrying a large volume of traffic). Too frequent use of the Cross Road sign should be avoided."

Of material significance to the foregoing instructions is G. S. 1949 (now K. S. A.) 8-510 which provides:

"The state highway commission shall adopt a manual and specifications for a uniform system of traffic-control devices consistent with the provisions of this act for use upon highways within the state. Such uniform system shall correlate with, and, so far as possible, conform to the system then current as approved by the American association of state highway officials."

By instruction No. 10 the trial court instructed the jury:

"You are instructed that stop signs and other traffic control devices become an important part of the physical appurtenances of the highways and are used for highway purposes and may be a defect in the highway as contemplated by K. S. A. 68-419.

"Stop signs and other traffic control devices are installed for the purpose of making the highways reasonably safe for the traveling public.

"It is the legal duty of the State Highway Commission of Kansas to so construct their traffic control devices and maintain the same in such a way as to be reasonably effective to serve the purpose for which they were intended, giving due consideration to all of the facts, circumstances and conditions that might reasonably be expected to affect safety of the traveling public."

It has been repeatedly held that the state's liability for a defect in a state highway, if any, is by reason of 68-419, *supra;* that the state has no liability under the statute unless the alleged defect in the state highway comes within the purview of its terms, and that such determination is a question of law. Any person seeking to recover against the state must bring himself clearly within the terms of the statute, and the court has no right to enlarge the scope of the statute nor amend it by judicial interpretation. The liability is predicated on the existence of a defect in the state highway and is not based upon the law of negligence. (*Cronin v. State Highway Commission,* 182 Kan. 42, 318 P. 2d 1066, and the numerous authori-

ties cited therein; and *Schroder v. Kansas State Highway Commission*, 199 Kan. 175, 428 P. 2d 814.)

In *Cronin* the court said:

". . . However, it may be said that throughout all these cases we have steadfastly adhered to the proposition there is no legal foot-rule by which to measure conditions generally and determine with exact precision whether a condition constitutes a defect and that in the final analysis it is the fixed policy of this court to handle each case separately and to either include it in or exclude it from the operation of the statute. . . ." (p. 45.)

In the case of *Dunlap v. Lawless*, 192 Kan. 686, 391 P. 2d 70, this court said:

". . . Although this court has on occasion remarked by way of observation that a dangerous condition in a highway is a defect in the highway, it did not state that any dangerous condition was *per se* a defect under the statute —one creating liability. In addition to being dangerous, a condition must also be one the legislature is deemed to have intended to fall within the statute creating liability. (See, *Sheen v. State Highway Commission,* supra [173 Kan. 491, 249 P. 2d 934].)" (p. 690.)

A case in which the facts are closely analogous to those in the instant case is *Phillips v. State Highway Comm.*, 146 Kan. 112, 68 P. 2d 1087. There a collision occurred between an automobile going north on a secondary road and one traveling on state Highway No. 4. The stop sign on the secondary road was hidden by weeds, and there was no other notice posted to give warning that the driver was entering an intersection of a state highway. This, it was alleged, created a defect in the state highway but the court held otherwise, stating:

". . . In this case the statute clearly provides for the erection of signs at certain intersections so that persons traveling on the highway may be protected from danger due to other travelers entering these intersections. The weeds which it is alleged hid the sign and thus constituted the alleged defect in the state highway were not on the state highway at all, but were on the county road. There is no allegation in the petition that there was any condition in the highway itself which rendered it unsafe for travelers thereon. Automobiles could have traveled on the state highway in this case every minute of the time in question and would not have been in the slightest danger on account of the alleged defect. Cars could have crossed the state highway on the secondary road at any time and would not have been in any danger from any condition in the highway itself. While the question of what condition in a highway constitutes a defect may in some cases be one for the jury, this court can say whether a particular condition is such as was intended by the legislature to render the highway commission liable. (See *Bohm v. Racette,* 118 Kan. 670, 236 Pac. 811, and *Snyder v. State Highway Comm.*, 139 Kan. 150, 30 P. 2d 102.)" (pp. 114, 115.)

The foregoing decision of the *Phillips* case was on a demurrer to the petition. When the case went back to the trial court the petition was amended to allege that the stop sign was placed on Highway K4 and two and one-half feet within the boundary lines of said highway under and by virtue of G. S. 1935, 8-122; and that it was hidden by a dense growth of weeds on state Highway K4. Upon return of the case to this court in *Phillips v. State Highway Comm.*, 148 Kan. 702, 84 P. 2d 927, the court again held the facts did not disclose that a defect existed within the purview of 68-419, *supra*. It said the state highway had no defect which imperiled the traffic passing over it, and that it was the collision of the automobiles on a perfectly good highway that caused the plaintiff's injuries. The court, however, discussed G. S. 1935, 8-122, which reads in part:

". . . That the state highway commission shall erect at entrances of intersecting state and federal highways signs notifying drivers of vehicles to come to a full stop before entering or crossing such designated highway, . . ."

In the opinion the court said the foregoing statute required the erection of such warning signs at the intersecting entrances of state and federal highways, not at the intersecting entrances of all public roads, however desirable such a stautory mandate would be. It noted the intersection at which the accident occurred was that of a state highway and a secondary road. The court then said:

". . . We have no right to enlarge the scope of the statute nor to amend it by judicial interpretation. . . .

"And since it is clear that the state highway commission committed no breach of statutory duty in respect to the maintenance of the stop sign at the entrance to highway K4, where plaintiff was injured, it becomes immaterial whether our decision in this case on the first appeal (146 Kan. 112, 68 P. 2d 1087) be regarded as *res judicata* or not; and the judgment of the district court in this second appeal cannot be disturbed. . . ." (pp. 705, 706.)

Thus, in the second appearance of the *Phillips* case before this court, it was inferentially held that had the State Highway Commission been under a duty to erect a stop sign at the intersection in question, the alleged defect would have been within the purview of G. S. 1935 (now K. S. A.) 68-419.

Since the *Phillips* decision, G. S. 1935, 8-122 has been repealed. (L. 1937, ch. 283, § 135.) The State Highway Commission has clearly admitted that the Uniform Traffic Control Manual adopted in 1962 prescribes standards for traffic control devices; that U. S.

Highway No. 154 is a through highway, and when stop signs are placed they must conform to the standards set out in the Uniform Traffic Control Manual; *that it had an absolute duty to conform to the rules set out in this Manual;* and specifically that it had a duty to place and maintain traffic control devices *at the intersection in question* in the instant case.

This court has long departed from the proposition that a defect in a state highway, to be within the purview of 68-419, *supra,* must be on the traveled portion of the roadway.

As long ago as 1923 this court in *Watson v. Parker Township,* 113 Kan. 130, 213 Pac. 1051, held that a ditch covered with weeds on the side of the traveled part of the road fell within the purview of the statute. There the road was only thirteen and one-half feet wide, and a motorist turned off the traveled portion of the road to avoid a collision with an oncoming vehicle, thereby running into the ditch, the depth of which he could not determine because it was covered with weeds. The court said this presented a question of fact for the jury as to whether the ditch was a defect, and that it would be a judicial invasion of the jury's function to hold arbitrarily that there was no defect in the road.

In *Snyder v. Pottawatomie County Comm'rs.,* 120 Kan. 659, 245 Pac. 162, the county commissioners negligently failed to install a guard rail or warning sign at a curve in a highway rising on a graded approach to a railroad crossing, and the court held this to be a defect in the highway. In the opinion the court said:

". . . While plaintiff and the driver could have seen the turn in the road before reaching it (finding 11), there was nothing to warn them that unless they turned sharply they would be trapped by the embankment; and the defect in the highway lay, not in the condition of the traveled portion of the way, which was wide enough (findings 13 and 17), but in the absence of a guard rail or warning sign." (p. 661.)

The court has adhered strictly to statutory liability under G. S. 1949, 68-301 (*Rockhold v. Board of County Commissioners,* 181 Kan. 1019, 317 P. 2d 490) just as it has under 68-419, *supra.* It has been said the statutes are similar where recovery is sought from the state under 68-419, *supra,* and where recovery is sought from a county or township under G. S. 1955 Supp. (now K. S. A.) 68-301. (*Cronin v. State Highway Commission,* 182 Kan. 42, 318 P. 2d 1066.)

*Grantham v. City of Topeka,* 196 Kan. 393, 411 P. 2d 634, is a recent decision by this court squarely holding that it is not necessary

that a defective condition be in the traveled portion of the roadway. There it was held if the condition is such that it affects the street to the extent that it is not reasonably safe for its intended use, a defective street condition exists, citing *Burns v. Emporia*, 63 Kan. 285, 287, 65 Pac. 260; and *Turner v. City of Wichita*, 139 Kan. 775, 33 P. 2d 335.

While liability in the *Grantham* case was predicated upon negligent failure of the city of Topeka to keep its streets reasonably safe for public use, this aspect of the case does not detract from the fact that such negligence caused *a defect* to exist *"in the public street."* In the *Grantham* case this court said:

"The city argues the sign was no physical part of the street and was not used for street purposes. We do not agree. The record shows that the stop and one-way sign was installed by the city in the parking near the curbline of the traveled portion of the street. *A street, like a public highway, is the entire way between the property lines of the abutting owners. . . . Where, as here, the city has exercised the discretion vested in it to designate through streets and provide for stop signs at each intersection facing the subordinate street,* except at those intersections where the traffic on the through street is controlled by traffic signals or stop signs as provided in Section 26-801 of the city ordinance, *the sign becomes an important part of the physical appurtenance of the street* and is used for street purposes. . . .

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"The purpose of designating certain streets as through streets is to expedite traffic insofar as speed is consistent with safety, *and to protect travelers on intersecting and through streets from the dangers of collision.* Both Tyler and Huntoon Streets had been accorded official priority by ordinances of the city creating them one-way through streets and providing for stop signs at each intersection, except that Tyler Street traffic was required to stop before entering or crossing Huntoon. *The stop and one-way sign was installed for the purpose of making the street safe for travel, but it was not in its normal or usual position in the street at the time of the plaintiff's accident; it had been knocked down or bent over and served no purpose to regulate traffic or warn and command persons to stop before proceeding into the Huntoon intersection. That the sign was defective is evident, and being a physical part of the street, it must be treated similar to other defective conditions in the street. . . ."* (pp. 401, 402.) (Emphasis added.)

It is apparent the trial court relied on the *Grantham* decision in framing its instructions and in the trial of this case.

The method recognized for expanding the scope of defects in a state highway under 68-419, *supra,* or in a township or county highway under 68-301, *supra,* is disclosed in *Story v. Brown County*, 116 Kan. 300, 226 Pac. 772. There the Board of County Commissioners had made a deep excavation in a county highway and failed

to erect proper warning signs as required by the statute. (G. S. 1935, 68-121.) The plaintiff was injured in attempting to avoid the excavation, which he was unable to do on account of the absence of warning signs and an adequate barrier. The defendant in that case argued at the time the defective highway statute was passed there was no law requiring the maintenance of lights or signs on account of road repairs, and that the passage of such an act did not extend the scope of the county's liability. In answer to that argument the court said:

". . . *Where the subsequent statute imposes upon the county a new duty with the purpose of making highways safer, we regard the omission of that duty as creating a defect in the highway within the meaning of the act establishing the county's liability. . . .*" (p. 302.) (Emphasis added.)

The *Story* case was cited and the foregoing quotation set out in *Phillips v. State Highway Comm.*, 146 Kan. 112, 68 P. 2d 1087.

In the instant case the State Highway Commission, pursuant to K. S. A. 8-510 adopted a Manual on Uniform Traffic Control Devices for Streets and Highways in 1962, and under K. S. A. 8-511 the duty is imposed upon the State Highway Commission to maintain traffic control devices upon all state highways in conformity to its Manual and specifications which have the force and effect of law. The Manual on Uniform Traffic Control Devices was prepared by the National Joint Committee on Uniform Traffic Control Devices comprised of various associations and committees designed to bring about the uniformity in the control of traffic.

The State Highway Commission of Wyoming adopted the Manual on Uniform Traffic Control Devices for Streets and Highways (June, 1961, edition), which was before the Supreme Court of Wyoming in *Fanning v. City of Laramie*, 402 P. 2d 460 (Wyo. 1965). There a stop sign on a city street was concealed by limbs and foliage of trees located between the crosswalk and traveled portion of the cross street, thereby creating a dangerous condition. An accident occurred as a result of such condition causing the death of a person, for which an action was filed. The city had designated the street in question as a through street, thereby becoming subject to the mandatory requirement that it erect signs conforming to statutory and Wyoming State Highway Commission directives. In Wyoming a city is liable under an exception to the governmental immunity doctrine for damage or injury suffered as a result of a street defect.

The Wyoming court said the adoption of the Manual and specifications by the State Highway Commission, pursuant to statutes of the state authorizing such action, made the regulations contained in the adopted Manual the law of the state just as much as any other regulations authorized by the legislature. In the opinion the court said:

"The City having elected to establish the through street and having erected the required stop sign was obligated to maintain its visibility and to exercise special care that shrubbery, *i. e.*, trees, was not allowed to obscure the sign and prevent it from conveying its message effectively. This principle of municipal liability was accepted in *Phinney v. City of Seattle*, 34 Wash. 2d 330, 208 P. 2d 879, 881, the court saying:

" 'We are of the opinion that the legislature intended . . . to authorize counties and cities . . . to determine and designate which roads and streets should be arterial highways, and whenever such action was taken to require such counties and cities . . . to erect and maintain stop signs; also that the legislature intended that if the counties or cities failed to comply with its mandate they would be liable in damages to users of the highways injured by such default. . . .' " (p. 466.)

The Wyoming Supreme Court noted the critical question in the case lies in whether *an imperative duty was placed upon the city to erect and adequately maintain a sufficient stop sign at the accident intersection.* The court found that such imperative municipal duty had been legislatively ordained and the city's usual governmental immunity had been impliedly waived by that arm of the state government which had the legal right to do so.

It seems obvious that by designating a high speed through highway as part of the state highway system, the state has created a new traffic hazard. In the absence of being a through highway, drivers of vehicles on both of the two intersecting roads would be governed by the ordinary rules of the road and are charged with the same exercise of care. But drivers of vehicles upon secondary highways which intersect through state highways are governed by different rules. A driver approaching a through highway, indicated by a stop sign, is required to stop his vehicle before entering the intersection. The driver of a vehicle on a through highway has a right to assume the way is clear for his passage through intersections, whereas the driver of the vehicle on the non-through intersecting highway is subject to a new and added peril when entering the intersection, unless given warning of the superior right of the driver on the through highway in the use of the intersection.

The discretion given the State Highway Commission in K. S. A. 8-511 by the language "upon all state highways *as it shall deem necessary*" (emphasis added) is a discretion to designate the state highways it deems necessary for public use as through highways, and not a discretion to mark or control only such intersections on a through highway as it chooses. Once a state highway has been established and designated as a through highway by posting, the absolute duty to comply with the Manual is imposed upon the State Highway Commission by the statute to control vehicular traffic using or entering upon such highway.

With the adoption of the Manual on Uniform Traffic Control Devices for Streets and Highways by the State Highway Commission pursuant to legislative authorization, these regulations have the force and effect of law. The State Highway Commission concedes that it has an absolute duty to conform to the rules set out in this Manual. If the obligation thereby imposed upon the State Highway Commission is to have any significance, *it requires that the installation and maintenance of a stop sign to control traffic entering a through state highway from a county road be sufficient and render the stop sign efficient to convey the message intended to control such traffic.* (*Story v. Brown County*, supra; *Snyder v. Pottawatomie County Comm'rs.*, supra; and *Phillips v. State Highway Comm.*, supra [148 Kan. 702].)

The admissions made by the State Highway Commission at the pretrial conference concerning its obligation to comply with the rules set out in the Manual and place a stop sign at the intersection in question are consistent with the obligation imposed upon it by law.

The pretrial order specified that an issue of fact in the case was whether the stop sign in question was erected at the height required by the Manual on Uniform Traffic Control Devices.

The jury resolved this question adverse to the State Highway Commission.

Analyzing the point in more detail, the trial court by instruction No. 2-B correctly set forth the applicable portions of the Uniform Traffic Control Manual. Rule No. 1A-22 pertaining to the height of signs requires that signs erected at the side of the road in rural districts shall be mounted at a height of at least five feet above the level of the roadway measured to the bottom of the sign, and in

case where parking is likely to occur *or where there are other obstructions to view,* the height shall be *at least seven feet.*

There was testimony, if believed, that the stop sign in question was possibly two to six inches less than five feet high to the bottom of the sign. Had the circumstances at this intersection called for a five-foot sign this would have been substantial compliance. The controversy, however, was not over six inches, but over the difference between five feet and a minimum of at least seven feet. On all the evidence presented the stop sign in question was obstructed by the cluster of bush-like trees or shrubs to the view of motorists using the Coronado Bridge Road. On the evidence presented the jury could well have found that the stop sign should have been placed at least seven feet high measured to the bottom of the sign, and by reason thereof the placement of the stop sign at five feet constituted a defect in the state highway because it did not convey the message intended.

There is evidence in the record that within a very few days after the accident in question, three trees were cut down which had been strung along the break of the shoulder on the east side of the Coronado Bridge Road a short distance south of the stop sign. The biggest one measured seven or eight feet tall. There was also evidence in the record admitted without objection that the stop sign in question was changed from a yellow to a red sign, and that the stop sign was made higher.

While the state has given its consent to be sued for defects in a state highway causing injuries, it may be conceded as the State Highway Commission contends, that the state has not given consent by statute to be sued for defects existing on county or township roads. (*Summerville v. State Highway Comm.,* 139 Kan. 530, 32 P. 2d 224.) The stop sign in question, however, was within the right-of-way of U. S. Highway No. 154 at the intersection in question.

A question of law to be determined by the trial court under the pretrial order was whether the condition surrounding the stop sign was a highway defect as contemplated by 68-419, *supra.* Basically the trial court by its instructions determined that the alleged defect within the purview of the statute centered on the condition of the stop sign within the state highway right-of-way. This is not to say that the conditions off the highway right-of-way surrounding the stop sign could not be taken into consideration. For it is only by looking at the surrounding circumstances, and in particular the

bushy tree obstructing the stop sign, that makes the stop sign defective or inefficient to convey the message—to stop traffic at the intersection before entering the state highway. In this respect the trial court properly instructed the jury. The jury was informed of the statute and the requirements of the Manual by instructions No. 2-A and No. 2-B, and then given a basic instruction on the duty of the state highway commission regarding stop signs and other traffic control devices by instruction No. 10.

The court holds that a stop sign on the side of a state highway within the highway right-of-way, which is defectively installed or obstructed from view so that it is inefficient to convey the message intended to control traffic entering the state highway from a county road, is a defect in the state highway within the purview of K. S. A. 68-419; and upon all the evidence presented by the record a jury question was presented as to whether the stop, sign in question constituted a defect in the highway, which was a proximate cause of the injury and damage to the members of the Brown family.

The appellant contends the record does not show that the State Highway Commission had notice of the defect in the state highway five days prior to the time the damage was sustained as required by K. S. A. 68-419.

The evidence disclosed Herman Wolfe was a highway maintenance foreman employed by the State Highway Commission for eighteen years, and at the time of the accident was working out of Dodge City. He testified that prior to June, 1963, he drove north on the Coronado Bridge Road from his home in Wilroads Gardens to its intersection with U. S. Highway No. 154 approximately twice a week for three years.

It has been held in actions such as this that notice of the defect need not be formal, but that there must be actual knowledge of the defect for the requisite period of time. (*Arnold v. Coffey County Comm'rs.*, 131 Kan. 343, 291 Pac. 762; and *Neiswender v. Shawnee County Comm'rs.*, 153 Kan. 634, 113 P. 2d 115. Actual knowledge of the defect, however, like any other fact, may be established by circumstantial evidence. (*Watkins v. Harper County*, 95 Kan. 166, 147 Pac. 822.)

When the testimony of the numerous witnesses in this case is considered (to the effect that the stop sign in question was completely obstructed by the bushy tree) the foregoing testimony of Herman Wolfe, who was admittedly a foreman for the State High-

way Commission in charge of maintenance of U. S. Highway No. 154 at the point in question, was sufficient for the jury to find the State Highway Commission had actual knowledge of the defect for the required period of five days. The jury was properly instructed and its general verdict indicates the jury found the notice to be sufficient.

Counsel for the appellant contend the verdict was rendered under the influence of passion and prejudice because improper prejudicial conduct of plaintiff's counsel prevented a fair trial.

The portions of the record indicated by the appellant to substantiate these charges have been carefully reviewed, and after considering them and the record as a whole, we are unable to say the conduct of counsel for the plaintiff prevented a fair trial.

The judgment of the lower court is affirmed.

PRICE, C. J., dissenting:

The allegedly obscured stop sign is the focal point of this case. I think the opinion of the court is based upon a completely erroneous premise in that it refers to this stop sign as being "on the side of a state highway." Conceding that its location was encompassed within the "corporate limits" of the right-of-way of the state highway—the plain fact of the matter is that it was located on the side or shoulder of the county road and its only purpose was to control traffic on the county road. A warning sign may absolve the state highway commission from liability for a dangerous condition (defect) in a state highway—but the absence of a warning sign is not the defect. The defect, if any—must already have been in objective existence. Other than the circumstances in connection with this stop sign which was on the side or shoulder of the county road and back from the state highway, as such—there is not the slightest suggestion in this case that there was any "defect" in the state highway at or near the intersection in question.

This case is unlike *Grantham v. City of Topeka*, 196 Kan. 393, 411 P. 2d 634, in which liability was predicated upon the negligent failure of the city to keep its streets reasonably safe for public use. Here, liability is statutory—and results only for injury sustained because of a defect in a state highway.

Some point also is made of the fact this stop sign was only about five feet high instead of seven feet. Under the evidence, however, it is fair to say that the small trees, brush and weeds were such as to obscure a view of the sign even had it been the required seven

feet high. Violation of a statute, ordinance, rule or regulation—although negligence *per se*—is actionable only when it is the proximate cause.

This tragedy occurred in the latter part of June—a period of rank weeds and sunflowers in Kansas. Undoubtedly there are thousands of county, township, country road—state highway intersections in this state. Does each of them—under facts and circumstances like those here—constitute a defect in a state highway? I think not.

Much more could be said, but, due to circumstances beyond the court's control—disposition of this case already has been delayed and it should be disposed of.

In my opinion the condition and circumstances shown here simply do not—as a matter of law—constitute a "defect in a state highway" within the meaning of K. S. A. 68-419. I therefore respectfully dissent.

FROMME, J., joins in the foregoing dissent.