No. 45,372

VIRGINIA C. COFFMAN, WAYNE E. COFFMAN, and DANA O. COFF-
MAN, by VIRGINIA C. COFFMAN, His Mother and Next Friend,
*Appellants*, v. JOHN F. FISHER and MARVEL E. FISHER, His Wife,
CONTRACTORS, INC., a Corporation, and THE BOARD OF COUNTY
COMMISSIONERS of the County of Osage, Kansas, *Appellees.*

(455 P. 2d 490)

June 14, 1969. Opinion filed

*Stephen Jones,* of Lyndon, argued the cause and was on the brief for the appellants.

*Adrian M. Farver,* of Lyndon, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

HATCHER, C.: This is an appeal from a summary judgment in favor of the defendant, the Board of County Commissioners of Osage County, Kansas, in an action for wrongful death due to an alleged defect in a county road.

The general facts may be stated as follows:

A county road extends in a general north and south direction from Quenemo on the south, passing through the city of Overbrook, and extending to the north county line of Osage County. At a point about one-half mile south of Overbrook the county road is intersected by a township road which runs in an east and west direction at that location.

In the year 1958, the county engineer directed personnel under his supervision to place and erect stop signs on the east and west sides of the county road at the intersection of the township road directing traffic traveling on the township road to stop before entering such intersection. The stop sign on the east side of the county road was installed east of the east line of the right-of-way. The installation was made without any authority, direction or order from the Board of County Commissioners.

Several months before October 16, 1965, the defendant, Contractors, Inc., in its construction work on the county road, knocked the stop sign down and employees of the Osage County Highway Department, with the knowledge of the county engineer, failed to replace the stop sign. It was removed to storage at Lyndon, Kansas.

On October 16, 1965, a collision occurred at such intersection between a vehicle being driven in a southerly direction on the county road by Richard M. Coffman and an automobile belonging to John F. Fisher, which was being driven by Marvel E. Fisher in a westerly direction and had entered the intersection from the township road on the east side. Richard Coffman was fatally injured. The present case involves an action by the heirs at law of Richard M. Coffman against the county, and others, for his wrongful death.

The petition alleged:

"Prior to 16 October 1965, defendant Board of County Commissioners of County of Osage, Kansas, designated the county road proceeding south from the City of Overbrook, Osage County, Kansas, a through highway and, pursuant to said designation and order to the County Engineer of Osage County, Kansas, said county engineer erected and placed stop signs to control traffic entering said county road from the intersecting township roads. Said designation and orders are now and have been continuously in effect since prior to 16 October 1965.

After the entering of the designations and orders above-recited, but prior to 16 October 1965, defendant Contractors, Inc., by its servants and agents, negligently removed said stop signs without permission and approval of the defendant Board of County Commissioners of the County of Osage, Kansas.

"The failure of defendant Board of County Commissioners of the County of Osage, Kansas, to maintain said stop sign, constituted a highway defect, . . ."

The defendant, the Board of County Commissioners, answered denying liability and presented affidavits. There was a joint affidavit by the three county commissioners which read in part:

"That the Board of County Commissioners of Osage County, Kansas, has never designated the aforesaid County Road, or any part thereof, as a through highway, nor has said Board ever designated any intersection of any road thereof as a stop intersection or as a yield intersection.

"That the Board of County Commissioners of Osage County, Kansas, have never deemed it necessary to place and maintain traffic-control devices of any type, or for any purpose, except speed signs, upon or near said County Road mentioned in Paragraph No. 2 hereof.

"That the Board of County Commissioners of Osage County, Kansas, has never authorized, directed or ordered the erection, placement or maintenance of any stop sign or yield sign upon or near said County Road, nor at any intersection of any road thereof."

There was also an affidavit by the county engineer which read in part:

"That the stop sign placed and erected on the east side of said highway at the aforesaid intersection was installed more than 50 feet east of the above mentioned Section Line and was never located upon the aforesaid highway right-of-way.

"That he has never received any authority, direction or order from the Board of County Commissioners of Osage County, Kansas, to erect, place or maintain any stop sign or yield sign upon or near the aforesaid highway, or at any intersection of any road thereof, but that said stop signs installed at the particular intersection above mentioned were installed at his sole discretion and direction, upon the suggestion of some individual, the identity of whom he does not recall at this time."

Although the oral testimony of the county engineer was also taken, it tended to support the statement in the affidavit.

The trial court sustained the motion of the Board of County Commissioners for summary judgment and in support of its action filed a well reasoned and comprehensive opinion in which it concluded:

"When all the facts and circumstances and authoritative interpretations are considered, the Court must and does conclude that there is no genuine issue as to any material fact and that as a matter of law, the condition disclosed by the record did not constitute a defective highway.

"The respective motions for summary judgment are sustained and judgment is rendered thereon for the defendant county and directed to be entered."

There is no genuine dispute on any material issue of fact, hence the case was ripe for a summary judgment.

The only issue before us is whether or not the failure to place a stop sign, or the failure to replace the stop sign which had been knocked down by the contractor widening the county road, constituted a defect under the provisions of K. S. A. 68-301, which reads in part:

"Any person who shall without contributing negligence on his part sustain damage by reason of any defective . . . highway, may recover such damage from the county . . . wherein such defective . . . highway is located, . . . when such damage was caused by a defective . . . highway which by law, or agreement entered into pursuant to law, the county is obligated to maintain, and when any member of the board of county commissioners, the county engineer . . . shall have had notice of such defects for at least five days prior to the time when such damage was sustained; . . ."

We need not cite authority for the statement that the liability of the county for any defects there may be in a county road is fixed by the above statute. The statute does not impose liability for general negligence. It is strictly a statutory liability for defects in highways. Whether an alleged defect comes within the purview of the statute is a question of law to be determined by the statute in the absence of any factual dispute as to the nature of the alleged defect. (*Dunlap v. Lawless*, 192 Kan. 686, 391 P. 2d 70.)

In considering whether or not the absence of a stop sign constitutes a defect in a state highway under K. S. A. 68-419, a statute similar to K. S. A. 68-301, this court has established the rule that failure to place a stop sign does not constitute a defect unless there is a statutory duty to erect a stop sign at the intersection. There would appear to be no reason why the same rule should not apply to county highways.

In *Phillips v. State Highway Comm.*, 148 Kan. 702, 84 P. 2d 927, we stated:

"It will be noted, however, that the statutory provision just quoted only required the erection of such warning signs at the intersecting entrances of state and federal highways, not at the intersecting entrances of all public roads, however desirable such a statutory mandate would be. The intersection at which this accident to plaintiff occurred was that of a state highway and a secondary (county or township) road. We have no right to enlarge the scope of the statute nor to amend it by judicial interpretation. . . .

"And since it is clear that the state highway commission committed no

breach of statutory duty in respect to the maintenance of the stop sign at the entrance to highway K4, where plaintiff was injured, it becomes immaterial whether our decision in this case on the first appeal (146 Kan. 112, 68 P. 2d 1087) be regarded as *res judicata* or not; and the judgment of the district court in this second appeal cannot be disturbed. . . ." (pp. 705 and 706.)

In *Brown v. State Highway Commission*, 202 Kan. 1, 444 P. 2d 882, we construed the above statement in the following language:

"Thus, in the second appearance of the *Phillips* case before this court, it was inferentially held that had the State Highway Commission been under a duty to erect a stop sign at the intersection in question, the alleged defect would have been within the purview of G. S. 1935 (now K. S. A.) 68-419." (p. 10.)

Although we hasten to add that the *Brown* case does not control the decision in the present case because of the difference in the factual situation, we do have authority for a definite rule that the absence of a stop sign on a highway, either state or county, does not constitute a statutory defect unless there is a breach of a statutory duty to maintain such a stop sign.

We fail to find any statutory duty on the part of the Board of County Commissioners of Osage County to erect and maintain a stop sign at the intersection in question.

The statute, K. S. A. 8-568 (*a*), dealing with authority to designate through highways and yield intersections, provides:

"The state highway commission with reference to state highways, and local authorities with reference to other highways under their jurisdiction, may designate through highways and erect stop signs or yield signs at specified entrances thereto, or may designate any intersection as a stop intersection or as a yield intersection and erect stop signs at one or more entrances to such intersection."

The phrase "Through highway" is defined in K. S. A. 8-501 as—

"Every highway or portion thereof at the entrances to which vehiclecular traffic from intersecting highways is required by law to stop before entering or crossing the same and when stop signs are erected as provided in this act."

Had the Board of County Commissioners designated the county highway under consideration as a through highway, or designated the intersection as a yield or stop intersection, it would then have had the statutory duty to place stop signs to so direct the traveling public. The trial court properly summed up the matter as follows:

". . . Stop signs only function to limit or restrict the priority of traffic or use of a highway. They have nothing to do with its physical condition. A highway may be imperfect or unsafe as a means of transit and a stop sign would contribute nothing to the relief of an impaired condition or description

in advance of any hazard beyond. *The permission to local authorities to designate through highways and to erect stop signs is a departure and enlarges the scope of responsibility to include traffic volume or use.* Like many other board actions, it is discretionary and not mandatory and any failure to act cannot be the subject of judicial interference in the absence of bad faith. Such is not an issue here. [Emphasis supplied.]

". . . The distinction is that absence of warning signs of the physical condition of the highway itself as a structural unit may constitute a defect, whereas absence of stop signs not specifically required by law, which inherently relate to another matter, that is, control of priority of use, do not. See *Higman v. Quindaro Township,* 89 Kan. 475; *Thummel v. State Highway Comm.,* 160 Kan. 532; *Schroeder v. Kansas Highway Commission,* 199 Kan. 175; and *Amis v. Jewell County,* 98 Kan. 321. . . ."

The appellants appear to recognize the above rules and to have now abandoned the allegation in the petition that the Board of County Commissioners of Osage County designated the county road in question as a "through highway" and pursuant to such designation and order the county engineer erected the stop signs at the intersection. The uncontroverted facts were directly to the contrary. There had been no designation and no order to erect the stop sign on the part of the Board of County Commissioners.

The appellants would now contend that since the members of the Board of County Commissioners authorized the payment for the stop sign and learned that it had been placed at the intersection in question they ratified the act of the engineer and are now estopped to deny their approval. There is no evidence that a stop sign was bought for the particular location.

Although a board of county commissioners may ratify and make valid its faulty attempt to do a certain thing, we must question its authority to make a valid police regulation by acquiescence in the acts of an employee even though the employee has the status of a county engineer.

The legislature delegated to "local authorities" the power to designate "through highways" and "stop intersections" or "yield intersections."

The term "Local authorities" is defined by K. S. A. 8-501:

"The Kansas turnpike authority and every county, municipal, and other local board or body having authority to adopt local police regulations under the constitution and laws of this state."

The board of county commissioners is the only county authority having the power to adopt local police regulations. Certainly the county engineer cannot.

In *Chaput v. Demars,* 120 Kan. 273, 243 Pac. 311, we find the following statement:

"The law was passed under the police power of the state. 12 C. J. [Constitutional Law, § 423,] 912 uses the following language:

" 'The police power is a governmental function, and neither the state legislature nor any inferior legislative body to which a portion of such power has been granted can alienate, surrender, or abridge the right to exercise such power by any grant, contract, or delegation whatsoever.' " (p. 276.)

In *Moore v. Wilson,* 84 Kan. 745, 115 Pac. 548, we state:

". . . The general rule is that official duties of a ministerial character may be delegated to another but those requiring the exercise of judgment and discretion can not, unless specific statutory authority to do so is given. . . ." (p. 747.)

We must conclude that a board of county commissioners could not be charged with having done by acquiescence and estoppel that which it could not have done by direct delegation of authority.

The record having disclosed no statutory duty on the part of the Board of County Commissioners of Osage County to erect and maintain a stop sign at the intersection in question, the absence of the stop sign did not constitute a defect under the provisions of K. S. A. 68-301.

The judgment is affirmed.

APPROVED BY THE COURT.

FATZER, J., dissents from the affirmance of the judgment of the district court.